UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL HILL and KAREN PITTMAN,

                     Plaintiffs,

           v.

JAMES PAYNE, et al.,

                     Defendants.
_____

DECISION & ORDER and
REPORT & RECOMMENDATION

18-CV-6022EAW

        Plaintiffs Michael Hill and Karen Pittman, acting *pro se*, filed a complaint asserting claims under 42 U.S.C. § 1983 against defendants James Payne, S. LaTona, C. Wilson, Kevin Payne, and James R. Vourtour, employees of the Niagara County Sherriff's Office (collectively, "County defendants"), and Thomas Loughren[1], Commissioner of the New York State Commission of Correction. (Docket ## 16, 22). Plaintiffs' claims stem from Hill's pretrial detention at the Niagara County Jail. (*Id.*). Specifically, plaintiffs assert the following claims:

    (1)    Defendants LaTona, Wilson, and Kevin Payne denied Hill his right to procedural due process in connection with a disciplinary hearing (Docket ## 15 at 16-20; 16 at ¶¶ 33-43; 22 at 9-11);

    (2)    Defendants Kevin Payne, Vourtour, and Loughren improperly denied Hill and Pittman permission to marry (Docket ## 15 at 20-21; 16 at ¶¶ 44-52; 22 at 11-12);

    (3)    Defendant Kevin Payne improperly denied Hill contact visits (Docket ## 15 at 21-23; 16 at ¶¶ 53-57; 22 at 13-15);

    (4)    Defendants James Payne and LaTona subjected Hill to an unreasonable and retaliatory strip search (Docket ## 15 at 23-26; 16 at ¶¶ 58-66; 22 at 15-18);

---

    [1] In his answer, defendant Loughren affirms that his name is misspelled in the complaint. (Docket # 28 at n.1).

  (5)  Defendants LaTona and James Payne subjected Hill to excessive force (Docket ## 15 at 28-29; 16 at ¶¶ 67-73; 22 at 19); and

  (6)  Defendants Kevin Payne and Vourtour denied Hill the right to practice his religion (Docket ## 15 at 29; 16 at ¶¶ 74-78; 22 at 19-22).

Currently pending before this Court are motions by Pittman and Hill for appointment of counsel. (Docket ## 51, 109). Also pending are Hill's[2] motions for an adverse inference sanction (Docket # 64), an order compelling further responses to interrogatories, document requests, and requests for admission (Docket ## 86, 88), and an order extending the deadline within which to move to amend the complaint (Docket # 89). Also pending before the Court for report and recommendation is the County defendants' cross-motion for a filing injunction. (Docket # 100).

### DECISION & ORDER

**I. Motions to Appoint Counsel**

It is well-settled that there is no constitutional right to appointed counsel in civil cases. Although the court may appoint counsel to assist indigent litigants pursuant to 28 U.S.C. § 1915(e), *see, e.g.*, *Sears, Roebuck and Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988), such assignment of counsel is clearly within the judge's discretion. *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984). The factors to be considered in deciding whether or not to assign counsel include the following:

  1.  Whether the indigent's claims seem likely to be of substance;

---

[2] Although these motions purport to be made on behalf of both Hill and Pittman, they were only signed by Hill. (Docket ## 64, 86, 88, 89). As Hill has been repeatedly warned, he is not authorized to represent Pittman and any document submitted on behalf of both plaintiffs must be signed by Pittman, as well as Hill. (Docket ## 12 at 3; 15 at 3 n.4; 110 at 6).

    2.       Whether the indigent is able to investigate the crucial facts concerning his claim;

    3.       Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;

    4.       Whether the legal issues involved are complex; and

    5.       Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.

*Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); see also *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986).

The Court must consider carefully the issue of appointment of counsel because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989). Therefore, the Court must first look to the "likelihood of merit" of the underlying dispute, *Hendricks v. Coughlin*, 114 F.3d at 392; *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d at 174, and "even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the . . . claim are thin and his chances of prevailing are therefore poor." *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit).

The Court has reviewed the facts presented herein in light of the factors required by law and finds, pursuant to the standards promulgated by *Hendricks*, 114 F.3d at 392, and *Hodge v. Police Officers*, 802 F.2d at 58, that the appointment of counsel is not necessary at this time. As stated above, a plaintiff seeking the appointment of counsel must demonstrate a likelihood of success on the merits. *See id*. Plaintiffs have done so at this stage. Moreover, the

legal issues in this case do not appear to be complex, and plaintiffs have not presented any special reasons justifying the assignment of counsel. As conceded by Pittman, her "circumstances have not changed since the filing of [her] initial request" for appointment of counsel, which previously was denied by the Court. (Docket ## 51 at ¶ 2; 22 at 22 ("[w]hile the Court is not unsympathetic to Pittman's situation, there is currently no basis to appoint counsel")). Similarly, Hill merely alleges that an attorney is required to assist him with discovery and management of Pittman's claims. (Docket # 109). On this record, their requests for the appointment of counsel (Docket ## 51, 109) are denied without prejudice at this time. It is the plaintiffs' responsibility to retain an attorney or press forward with this lawsuit *pro se*. 28 U.S.C. § 1654.

## II.     Motion for Adverse Inference Sanction

Hill requests that the Court impose sanctions in the form of an adverse inference instruction against the defendants as a result of the purported loss of testimony of a non-party witness, his brother Maurice Hill, who is now deceased. (Docket # 64). According to Hill, while he was incarcerated at the Niagara County Jail in November 2017, he became the subject of an investigation into the sale and distribution of contraband razor blades; he further alleges that the investigation was based upon information provided to jail personnel by a confidential informant, who stated that Hill sold him a razor blade. (*Id.* at ¶¶ 5-7). On November 7, 2017, jail personnel entered Hill's cell, extracted and restrained him, and issued Hill a misbehavior report. (*Id.* at ¶ 12). Hill maintains that a search of his cell was also conducted. (Docket # 16 at ¶ 39).

A disciplinary hearing on the misbehavior report was held two days later, on November 9, 2017, at which Hill requested the testimony of Maurice Hill, who was incarcerated

in the same unit as Hill at the Niagara County Jail.  (*Id.* at ¶¶ 13-14, 17).  Hill maintains that his request to present witness testimony was denied.  (*Id.*).  His current claims for excessive force and denial of procedural due process arise out of the November 7, 2017 incident and subsequent disciplinary hearing.  (Docket # 16 at ¶¶ 33-43, 67-73).

       Hill represents that Maurice Hill would have testified that plaintiff Hill never possessed or sold razor blades or other contraband and that Maurice overheard the confidential informant conspire with others to implicate plaintiff.  (*Id.* at ¶¶ 17-18).  According to Hill, following the incident, the facility implemented and enforced a "keep away" restriction preventing contact and communication between plaintiff and his brother, which prevented plaintiff from obtaining an affidavit from Maurice.  (Docket # 74 at ¶ 9).  The "keep away" policy was apparently rescinded in mid-April 2018.  (Docket ## 70-3 at ¶ 10; 70-6; 74 at 15).

       The parties appear to agree that Maurice Hill was incarcerated at the Niagara County Jail during three separate periods of time: October 17, 2017 through April 20, 2018; July 17, 2018 through November 30, 2018; and, February 21, 2019 through March 19, 2019.  (Docket ## 70-3 at ¶¶ 12-14; 74 at ¶¶ 11-12).  According to the parties, Maurice Hill was released to the custody of the Rochester Psychiatric Center in April 2018 and November 2018 and released into the community in March 2019.  (Docket ## 70-3 at ¶¶ 12-14; 74 at ¶¶ 11-13).  On June 21, 2020, Maurice Hill was shot and subsequently died from his injuries.  (Docket ## 64 at ¶ 33; 70-7 at 7).

       Hill maintains that he is entitled to an adverse inference sanction because Maurice Hill is no longer available to provide testimony in this matter and defendants did not act to preserve his testimony.  (Docket # 64).  According to Hill, defendants have been on notice since November 9, 2017, when he requested and was denied permission to present his brother's testimony during his disciplinary hearing, that Maurice Hill had testimony relevant to his claims.

(Docket ## 64 at ¶¶ 3, 13-14; 74 at 12, ¶ 17). Hill further contends that defendants had a duty to obtain and preserve that testimony. (*Id.*). He also argues that defendants should have taken steps to preserve his testimony during Maurice's subsequent periods of incarceration. (Docket # 74 at 10, ¶¶ 11-12). With respect to his own failure to preserve Maurice's testimony, plaintiff claims that the facility's "keep away" restriction prevented him from doing so. (Docket ## 64 at ¶ 31; 74 at 10, ¶ 9).

Defendants oppose the motion on the grounds that it is both premature and meritless. (Docket ## 68, 70-7). Defendants contend that they had no duty or ability to preserve "testimony" that was never given. (Docket # 68 at 4-5). They further assert that they did not have control over Maurice Hill and, even if they could be said to have had control during his periods of incarceration, such control would have ceased when Maurice Hill was released from jail, well before his death. (Docket ## 68 at 5-6; 70-7 at 7-8). The County defendants also contend that Maurice Hill's testimony is not relevant to the claims asserted in the complaint. (Docket # 70-7 at 9-11).

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'" *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)), *abrogated on other grounds by Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1724 (2013); *see also Residential*

*Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002) (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 135-36 (2d Cir. 1998)), *superseded by rule on other grounds as recognized by CAT3, LLC v. Black Lineage, Inc.*, 2016 WL 154116 (S.D.N.Y. 2016).

A party bringing a spoliation motion must demonstrate that: (1) the party charged with destroying the evidence had an obligation to preserve it; (2) the evidence was destroyed with a "culpable state of mind"; and, (3) the destroyed evidence was relevant to the party's claim or defense. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d at 107 (citing *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107-08 (2d Cir. 2001)); *see also Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 430 (S.D.N.Y. 2009); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

As an initial matter, whether Hill was improperly denied his request to present Maurice Hill's testimony during his disciplinary hearing is the gravamen of his pending procedural due process claim, which will be resolved through a dispositive motion or trial, but not through a discovery sanctions motion. In any event, Hill's suggestion that defendants had the duty to preserve Maurice Hill's testimony for use in connection with this litigation is a contention supported neither by the law nor the facts of this case.

"Implicit in a party's duty to preserve evidence is the assumption that the party against whom sanctions are sought had 'control' over the missing evidence." *See Stanbro v. Westchester Cnty. Health Care Corp.*, 2021 WL 3863396, *11 (S.D.N.Y. 2021) (citing Fed. R. Civ. P. 37(e), Advisory Committee Note, 2015 Amendment (a party cannot breach its preservation obligation if the evidence at issue is not "in the party's control")). "Evidence is within a party's control for discovery purposes when the party has the legal right, authority, or practical ability to obtain such evidence by virtue of its relationship with the party in possession

of the evidence." *See id.* (emphasis and internal quotations omitted).  Although Maurice Hill was in the custody of the Niagara County Jail during his periods of incarceration, defendants had no greater ability than plaintiff to compel him to provide an affidavit for use in this litigation.  Because Maurice Hill was never a party to the litigation, he would have had to have been subpoenaed pursuant to Rule 45 of the Federal Rules of Civil Procedure to provide testimony – a discovery tool equally available to all parties, including plaintiff.  Moreover, it does not appear that the defendants were served with the summons and complaint until February or March 2020 (Docket ## 22-24, 26), well after Maurice Hill had been released from custody.  *See Guillory v. Skelly*, 2014 WL 4542468, *4 (W.D.N.Y. 2014) ("duty to preserve evidence . . . arises when the party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed") (internal quotations omitted).

    I also reject the contention that the facility's "keep away" restriction prevented Hill from preserving Maurice Hill's testimony through an affidavit or otherwise.  The "keep away" restriction was lifted in April 2018 – more than two years before Maurice Hill's death. (Docket # 74 at 15).  If Hill believed that Maurice Hill's testimony was relevant to his claims, he should have obtained an affidavit from Maurice Hill after the restriction was lifted or served him with a subpoena to obtain his testimony for this action, which was commenced in January 2018.

    On this record, Hill's request for the imposition of sanctions, including an adverse jury instruction, is denied.

**III.**  <u>**Motion to Compel Further Discovery Responses**</u>

    Hill served the County defendants with a set of ten interrogatories, two sets of document requests (totalling thirty-two requests), a demand for photographs (totalling four

requests), and four sets of requests for admission (one to each individual defendant, totalling eighty-four requests). (Docket # 100-2). The County defendants responded to the discovery demands in June 2021. (Docket ## 100-1 at ¶ 14; 100-3). Hill's pending motions challenge the adequacy of the majority of defendants' responses and also seek sanctions in the form of fees with which to retain an attorney. (Docket ## 86 at 22; 88).

The County defendants have opposed the motions on the grounds that Hill failed to confer in good faith prior to filing the pending motions. (Docket # 100-4 at 4-5). Additionally, the County defendants maintain that their discovery responses are adequate. (*Id.* at 5-13).

A. **Failure to Confer**

Having reviewed the discovery requests and responses, and the parties' submissions, I find that Hill failed to comply with Rule 37(a)(1) of the Federal Rules of Civil Procedure because he made no meaningful effort to resolve or narrow his discovery disputes with defendants prior to filing the motions. *See* Fed. R. Civ. P. 37(a)(1) ("[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action"). Nothing in the record establishes that the parties ever meaningfully conferred about the pending discovery disputes. Hill's failure to comply with Rule 37 warrants denial of his motions, including his requests for costs. *See Brown v. Clayton*, 2013 WL 1409884, *2 (D. Conn. 2013) ("[t]he failure to follow the meet and confer requirement is a sufficient basis for denying the motion to compel").

Despite the absence of any meaningful conferral, the County defendants have nonetheless responded to Hill's complaints, presumably in an attempt to narrow the issues

pending before the Court. (Docket # 100-4). Before seeking relief from this Court, Hill must consider defendants' submissions and the explanations offered therein and address them specifically with counsel for the defendants in order to attempt to resolve any remaining disputes. In order to assist the parties' conferral process, the Court will nonetheless address various of the disputes below.

    **B.**    **Responses to Document Requests and Interrogatories**

        **1.**    **Requests Relating to Claims Not Before the Court (Interrogatories Nos. 3, 8, 9 and 10; Document Request No. 22; Second Set of Document Requests; Requests for Photographs Nos. 3 and 4)**

Several of Hill's interrogatories appear to seek information relating to claims that have been dismissed by the district court. For instance, Interrogatories Nos. 8 and 9 seek information concerning the identity and race of hearing officers and inmates subjected to disciplinary procedures. (Docket # 100-3 at 18). Hill maintains that this information is relevant to establish that he was subjected to racial discrimination in connection with his disciplinary hearing. (Docket # 86 at 7-8). The district court, however, has dismissed Hill's claim that he was subjected to racial discrimination in connection with the disciplinary hearing. (Docket # 15 at 16-17). Similarly, Interrogatory No. 10 seeks information relating to classification officer duties. (Docket # 100-3 at 19). According to Hill, he seeks this information in connection with his allegations that the classification officer failed to properly document his race during the booking process. (Docket # 86 at 9). Again, this claim has been dismissed by the district court. (Docket ## 15 at 13; 22 at 5-9, 19-21).

    Various of Hill's document requests, including Request No. 22 of the First Set of Document Requests and all of the demands in the Second Set of Document Requests, seek documents relating to another inmate whom Hill identifies as the confidential informant who

accused him of possessing and selling contraband razor blades. (Docket ## 86 at 20-22; 88 at 3-6; 100-3 at 10, 60-65). Hill maintains that the requested documents are relevant in order to identify informants and obtain information from them as to whether probable cause existed for the defendants to enter and extract Hill from his cell in order to conduct a search of the cell on November 7, 2017. (Docket # 88 at 4). The Fourth Amendment's probable cause requirement, however, "is inapplicable to the unwarranted search of an inmate's prison cell, as inmates have no reasonable expectation of privacy in such a place." *Anderson v. Connell*, 2009 WL 3165541, \*4 (N.D.N.Y. 2009). Accordingly, to the extent Hill maintains this information is relevant to assess whether information provided by confidential informants amounted to probable cause to search his cell and remove him from it, such information does not appear relevant to any pending claims in this litigation. Of course, Hill's excessive force claims against LaTona and James Payne arise, in part, out of events that occurred in the cell on November 7, 2017. In addition, defendants' denial of contact visits and issuance of the misbehavior report at issue were apparently based, at least in part, upon alleged confidential informant information about Hill's distribution of razor blades. Thus, information as to the informants' reliability may indeed be relevant insofar as any defendants seek to justify the type or amount of force used during the cell extraction, the denial of contact visits, or the issuance of the misbehavior report based upon information learned from confidential informants. The parties should discuss whether and the extent to which information relating to the confidential informants is relevant to the claims and defenses asserted in this litigation.

    Similarly, several of Hill's requests, including Interrogatory No. 3 and Photo Demands Nos. 3 and 4, seek information or photographs relating to particular areas of the Niagara County Jail, including negative pressure cell # 4 and the restricted visiting area. (Docket

11

## 86 at 6, 11-14; 100-3 at 17, 20-21). Although Hill maintains that information relating to the negative pressure cell is relevant to his allegations of cruel and inhumane treatment (Docket # 100-3 at 21), there are no conditions of confinement claims pending in this action. Similarly, Hill maintains that a photograph of the restricted visiting area is relevant to demonstrate that he was denied visits in the general visiting area (Docket # 100-3 at 21); however, the salient issue with respect to his denial of contact visits claim is whether the restriction "was imposed for punitive reasons or for a legitimate purpose reasonably related to a legitimate objective" (Docket # 22 at 13). For these reasons, the requests discussed above do not appear to seek information relevant to any pending claims.

### 2. **Employee Manual/Handbook (Interrogatory No. 4)**

Interrogatory No. 4 seeks production of the employee manual or handbook. (Docket ## 86 at 6-7; 100-3 at 17). The County defendants objected to this interrogatory on the grounds that it calls for the production of documents and seeks irrelevant, confidential, and/or privileged information. (*Id.*). Although the Court agrees with defendants that this information should be sought through a document request, the parties should discuss defendants' objections and determine whether specific relevant information exists that may be provided by defendants without implicating confidentiality concerns. To the extent defendants maintain that production of relevant portions of the employee handbook or manual would jeopardize institutional safety, they should redact those portions and submit them to the Court for *in camera* review.

### 3. **Facility Directives, Policies, Guidelines, and/or Regulations (Interrogatory No. 1; Document Request No. 4)**

Interrogatory No. 1 and Document Request No. 4 seek production of facility "directives, policies, guidelines, and/or regulations" relating to inmate marriages. (Docket ## 86

at 4-5, 15-16; 100-3 at 5, 16). The County defendants objected to the interrogatory because it requests the production of documents. (*Id.*). Regarding policies relating to inmate marriages, the County defendants responded that they "followed the New York State Commission of Correction Minimum Standards and Regulations regarding such requests," but apparently did not produce a copy of the relevant standards and regulations. (*Id.*). The County defendants should produce the relevant standards and regulations unless they can articulate a reasonable and justifiable basis for withholding such documents that outweighs their relevance.

        **4.**      **Requests for Grievances and Tier Hearing Appeals (Document Requests Nos. 5 and 11)**

These requests seek grievances filed by Hill, and responses thereto, relating to the facility's denial of his request to marry Pittman, and Hill's Tier hearing appeals. (Docket # 100-3 at 5, 7). The County defendants maintain that they produced documents responsive to those requests in their initial disclosures. (Docket ## 100-3 at 5, 7; 100-4 at 8). Hill contends that the County defendants failed to produce some of his grievances relating to the denial of his request to marry and states that they produced only his grievances relating to his complaints that defendants failed to address his marriage-related grievances. (Docket # 86 at 16-17). Similarly, with respect to the Tier hearing documents, Hill maintains that the defendants did not produce his appeal, the answer to the appeal, and his request for witness and documents. (*Id.* at 18-19). The parties should confer to identify the specific documents Hill seeks. To the extent the County defendants have already produced the documents, they should identify where within the production the documents may be found. In the event the documents have not been produced, the County defendants should produce the documents or confirm in writing that the documents are not within their possession, custody or control.

### 5. **Logbook Entries**
   **(Document Request No. 10)**

Hill requested log book entries, reports, files, memoranda and communications relating to each of his grievances. (Docket ## 86 at 17-18; 100-3 at 7). The County defendants maintain that they produced responsive documents. (Docket ## 100-3 at 7; 100-4 at 9). In his motion, Hill narrows his request to all "G-block activity logbook entries" for November 7 and 8, 2017. (Docket # 86 at 17-18). He suggests that the County defendants have produced a version of the logbook entries that has been "doctored." (*Id.*). The parties should confer in an attempt to resolve this dispute. To the extent the County defendants have produced a redacted version of the logbook entries, they should provide justification for the redactions made and submit unredacted copies to the Court.

### 6. **Lawsuits Against Individual County Defendants**
   **(Document Request No. 13)**

Document Request No. 13 seeks copies of lawsuits against the individual County defendants.[3] (Docket ## 86 at 19-20; 100-3 at 8). The County defendants objected to this request on the grounds that it seeks public information accessible to Hill. (Docket ## 100-3 at 8; 100-4 at 9). Hill maintains that his ability to access this information is limited due to his incarceration. (Docket # 86 at 20). The County defendants should search for and produce for each individual defendant any responsive documents identifying lawsuits filed against them that involve claims similar to those pending against them in this lawsuit (denial of due process during disciplinary hearings, denial of requests to marry, denial of requests for contact visits,

---

[3] Although the request also appears to seek documents relating to lawsuits against Thomas Loughren, Hill's motions challenge the adequacy of the responses provided by the County defendants. (Docket ## 86, 88). To the extent Hill disputes the adequacy of Loughren's response to this request, he must confer with Loughren's counsel to address the dispute before filing any motion.

unreasonable or retaliatory strip searches, excessive force, or denial of the right to practice religion).

### 7. Requests for Photographs of Hill's Cells (Photograph Demands Nos. 1 and 2)

Hill has requested production of photographs of the cell from which he was extracted on November 7, 2017, and the cell to which he was relocated. (Docket ## 86 at 10-11; 100-3 at 20). The County defendants' objection to production of these photographs is not based upon any security concerns; rather, they maintain that they do not possess photographs of these the cells and should not be required to produce one. Although defendants are correct that they cannot be compelled "to produce that which does not exist," *Head v. Artus*, 2018 WL 635919, *3 (W.D.N.Y. 2018), Rule 34(a)(2) of the Federal Rules of Civil Procedure affords Hill the right to request inspection of relevant parts of the facility in order take photographs, *see* Fed. R. Civ. P. 34(a)(2). Accordingly, defendants should either obtain and produce photographs of the cells or permit Hill, Pittman or an agreed-upon designee to photograph the cells.

### C. Responses to Requests for Admissions

Hill challenges several of defendants' responses to his requests for admission. (Docket # 88 at 6-13). The County defendants counter that they properly responded to each request. (Docket # 100-4 at 10-11). As with Hill's other discovery disputes, I find that he is not entitled to the relief that he seeks because he has failed to satisfy his conferral obligations. *See Beasley v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 1268709, *3 (W.D. Wash. 2014) ("[l]ike other motions to compel, a motion to determine the sufficiency of answers is also subject to the requirement that the moving party attempt first to confer with the other side to avoid the need for a hearing") (quotations and brackets omitted).

15

Several of Hill's challenges appear to amount to nothing more than substantive factual disputes with the defendants. (Docket # 88 at 9-12 (Request Nos. 8, 15 and 22)). That the answering party has a different version of events from the requesting party does not justify judicial intervention or relief.

The remaining requests (Request Nos. 5, 6, 11 and 17) are unduly confusing and complex. As noted by Hill in his papers, "[t]he purpose of Rule 36(a) is to narrow the issues for trial to those which are genuinely contested." *Hill v. Lappin*, 2012 WL 2049570, *2 (M.D. Pa. 2012) (quotation omitted). Accordingly, requests for admission "should be drafted in such a way that a response can be rendered upon a mere examination of the request [,] . . . [and] the facts stated within the request must be singularly, specifically, and carefully detailed." *Weinstein v. Univ. of Conn.*, 2014 WL 3849971, *2 (D. Conn. 2014) (quotation omitted); *see also Hill v. Lappin*, 2012 WL 2049570 at *4 ("[r]egardless of the subject matter of the Rule 36 request, the statement of the fact itself should be in simple and concise terms in order that it can be denied or admitted with an absolute minimum of explanation or qualification") (quotation omitted). Accordingly, "Rule 36 requires that each request for admission . . . be direct, simple and limited to singular relevant facts." *Weinstein v. Univ. of Conn.*, 2014 WL 3849971 at *2 (internal quotations and brackets omitted). Many of Hill's requests do not meet this standard; rather, they are "prolix, argumentative, confusing and embrace[] compound subjects, actors, events and assertions." *Hill*, 2012 WL 2049570 at *2; *see also Scott v. Keller*, 2010 WL 1267772, *3 (E.D. Cal. 2010) ("[m]any of the requests are compound rather than separately stated, seek a legal conclusion, assume disputed facts, request[] speculation, or are unintelligible"). Defendants generally appear to have responded to the requests in accordance with Rule 36 of the Federal Rules of Civil Procedure by either admitting the request, denying the request, admitting

portions of the request where possible, or stating their inability to admit or deny the request, with an explanation for their inability to do so. *See* Fed. R. Civ. P. 36; *see also Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 78 (N.D.N.Y. 2003) ("[as] an alternative to denying the requested admission[,] [a] party is permitted to . . . set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter") (internal quotations omitted).

### D. Request for Costs

Hill also seeks costs in connection with his discovery motions. (Docket # 86 at 21-22). Rule 37 of the Federal Rules of Civil Procedure provides that if a motion to compel is granted or if the "requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). Courts are afforded broad discretion in imposing sanctions. *Corporation of Lloyd's v. Lloyd's U.S.*, 831 F.2d 33, 36 (2d Cir. 1987) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976)). A request for fees may be denied where (1) the movant did not make a good faith effort to resolve the dispute before filing the motion; (2) the non-moving party's failure to provide the discovery response was "substantially justified"; or (3) the award of fees would be unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

Because Hill did not make a good faith effort to resolve these disputes with counsel for defendants before filing the motions, he is not entitled to costs. Hill has also failed to demonstrate his costs. Accordingly, Hill's application for costs is denied. *See* Fed. R. Civ. P. 37(a)(5)(A)(i); *Lozano v. Peace*, 2005 WL 1629644, *2-3 (E.D.N.Y. 2005) (declining to grant request for costs where *pro se* plaintiff failed to demonstrate any expenditures).

17

## IV. Extension of Deadline for Filing Motion to Amend

By letter dated July 2, 2021, Hill requested an extension of the court-ordered deadline of July 7, 2021 for filing motions to amend the pleadings. (Docket ## 59, 89). Hill's motion was received and docketed by the Court on July 8, 2021. (Docket # 89). Hill maintains that an extension of the deadline is warranted as a result of recent medical imaging he underwent which apparently revealed "his old 2017 [wrist] injury" and the pendency of the discovery motions addressed in this decision. (*Id.*).

Defendant Loughren does not oppose the request, although he requests a corresponding extension of the deadline to complete depositions. (Docket # 99). The County defendants oppose the requested extension on the grounds that Hill has failed to establish good cause to extend the deadline and that any request to add additional parties would be futile. (Docket # 103).

I find that good cause warrants extension of the deadline for filing motions to amend. Hill made the request before the deadline expired, and his request is based, in part, on the pendency of the motions to compel further discovery responses from the defendants. Any motions to further amend the pleadings shall be filed by **May 9, 2022**. All other subsequent deadlines in the scheduling order are also extended as reflected in the Amended Scheduling Order issued contemporaneously with this decision.

## REPORT & RECOMMENDATION

The County defendants move the Court to enjoin plaintiffs from filing any further motions or submissions in view of the numerous discovery requests propounded by Hill and the fact that he filed six separate motions, "most of which primarily focus on discovery." (Docket

# 100-4 at 11-13). According to defendants, several of Hill's motions repeat arguments made and request relief sought in other motions. (*Id.*). Having reviewed the submissions, and given Hill's *pro se* status, I do not find that the extreme remedy of a filing injunction is appropriate or necessary at this time to adequately protect the courts and other parties. Although Hill has filed several motions, the Court does not find that the motions are vexatious or sufficiently duplicative to justify an order barring plaintiffs from seeking further relief from the Court absent special permission. On this record, I recommend that the district court deny the County defendants' request for a filing injunction. *See Ezeh v. McDonald*, 2015 WL 260714, *11 (W.D.N.Y. 2015). That said, plaintiffs are reminded that they may not file motions seeking relief that has already been denied by the Court or file duplicative motions.

## CONCLUSION

For the reasons discussed above, Hill's and Pittman's motions to appoint counsel **(Docket ## 51, 109)** are **DENIED without prejudice**. Hill's motion for an adverse inference sanction **(Docket # 64)** is **DENIED**, his motions to compel further discovery responses **(Docket ## 86, 88)** are **DENIED without prejudice to renewal** following a good faith and genuine conferral, and his motion for an extension of the deadline to amend the pleadings **(Docket # 89)** is **GRANTED**. Any motions to further amend the pleadings shall be filed by **May 9, 2022**. I further recommend that the motion by the County defendants for a filing injunction **(Docket # 100)** be denied.

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
March 8, 2022

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(e) and Local Rule 72.

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b), or with the similar provisions of Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
March 8, 2022