UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL HILL and KAREN PITTMAN,

                        Plaintiffs,

           v.

JAMES PAYNE, et al.,

                      Defendants.

_____

<u>DECISION & ORDER</u> and
<u>AMENDED SCHEDULING ORDER</u>

18-CV-6022EAW

Plaintiffs Michael Hill and Karen Pittman, acting *pro se*, filed a complaint

asserting claims under 42 U.S.C. § 1983 against defendants James Payne, S. LaTona, C. Wilson,

Kevin Payne, and James R. Vourtour, employees of the Niagara County Sherriff's Office

(collectively, "County defendants"), and Thomas Loughren[1], Commissioner of the New York

State Commission of Correction.  (Docket ## 16, 22).  Plaintiffs' claims stem from Hill's pretrial

detention at the Niagara County Jail.  (*Id.*).  Specifically, plaintiffs assert the following claims:

    (1)     Defendants LaTona, Wilson, and Kevin Payne denied Hill his right to
            procedural due process in connection with a disciplinary hearing (Docket
            ## 15 at 16-20; 16 at ¶¶ 33-43; 22 at 9-11);

    (2)     Defendants Kevin Payne, Vourtour, and Loughren improperly denied Hill
            and Pittman permission to marry (Docket ## 15 at 20-21; 16 at ¶¶ 44-52;
            22 at 11-12);

    (3)     Defendant Kevin Payne improperly denied Hill contact visits (Docket
            ## 15 at 21-23; 16 at ¶¶ 53-57; 22 at 13-15);

    (4)     Defendants James Payne and LaTona subjected Hill to an unreasonable
            and retaliatory strip search (Docket ## 15 at 23-26; 16 at ¶¶ 58-66; 22 at
            15-18);

---

[1] In his answer, defendant Loughren affirms that his name is misspelled in the complaint.  (Docket # 28 at 1 n.1).

(5)     Defendants LaTona and James Payne subjected Hill to excessive force (Docket ## 15 at 28-29; 16 at ¶¶ 67-73; 22 at 19); and,

(6)     Defendants Kevin Payne and Vourtour denied Hill the right to practice his religion (Docket ## 15 at 29; 16 at ¶¶ 74-78; 22 at 19-22).

The following motions are currently pending before this Court: (1) plaintiffs' motion for appointment of an expert (Docket # 126); (2) plaintiffs' motion for sanctions and an order to compel (Docket # 141); (3) County defendants' cross-motion for a special master to supervise, and an extension of time to complete, plaintiffs' depositions (Docket # 145); (4) plaintiffs' motion in limine (Docket # 143); (5) County defendants' motion for an extension of time to file dispositive motions (Docket # 150); and, (6) plaintiffs' motion for a special master to review County defendants' discovery responses (Docket # 152).[2]  The Court grants County defendants' motions to extend the deadlines to complete discovery and file dispositive motions; all other pending motions are denied, with the exception of plaintiffs' requests for an order to compel, which are granted in part and denied in part.  The numerous specific discovery disputes raised in the various pending motions are addressed below.

## DECISION & ORDER

### I.     Motion for Appointment of Expert

Plaintiffs ask the Court to appoint an expert "to investigate their claims of mental and emotional distress from extreme isolation, [defendants'] infring[ement] upon their rights to marriage, as well as the actual procedures followed when punishing an inmate, and the affects

---

[2]  The Court has repeatedly warned that documents submitted on behalf of both plaintiffs must be signed by Pittman and Hill.  (Docket ## 12 at 3; 15 at 3 n.4; 110 at 6; 119 at 2 n.2).  Several of the filings currently before the Court were not signed by either Pittman or Hill.  (*See*, *e.g.*, Docket ## 141 at 2, 11, 15 (unsigned notice of motion, affirmation, and certificate of service); 143 at 30-31).  This Court cautions that any additional filings that have not been signed may be stricken without consideration of their merits.

[*sic*] of that punishment." (Docket # 126 at 1).  County defendants oppose the motion, maintaining that appointment of such an expert would serve the sole purpose of assisting plaintiffs with discovery and advancing plaintiffs' "partisan position rather than serv[ing] the purpose of having a neutral expert appointed to . . . assist the Court with complex issues." (Docket # 129-1 at 6).  Further, County defendants argue that they should not "potentially be exposed to bearing the cost of the indigent [p]laintiffs' expert where Mr. Hill is in the best position to testify himself as to his state of mind at the time of the incarceration at issue." (*Id.* at 7).  In reply, plaintiffs contend that the expert would provide neutral evidence because neither the Court nor the parties have an idea "of what information may be generated and produced and how it may be relevant to both sides." (Docket # 137 at 7).  They further maintain that they do not have the expertise to diagnose any psychological injuries or conditions that may have resulted from County defendants' conduct. (*Id.* at 4-5).

Rule 706 of the Federal Rules of Evidence allows the Court, on its own motion or on motion of another party, to appoint an expert witness. Fed. R. Evid. 706(a); *Pabon v. Goord*, 2001 WL 856601, *1 (S.D.N.Y. 2001).  The Court has broad discretion to determine whether to appoint an expert witness. *Pabon v. Goord*, 2001 WL 856601 at *1.  In deciding whether to appoint an expert witness, the Court should consider "such factors as the complexity of the matters to be determined and the Court's need for a neutral, expert view." *Benitez v. Mailloux*, 2007 WL 836873, *1 (N.D.N.Y. 2007) (quotations omitted).

The appointment of an expert witness pursuant to Rule 706 is not intended to aid litigants, but rather "to aid the Court, through the services of an impartial expert, in its assessment of technical issues." *Id.*; *see also Reynolds v. Goord*, 2000 WL 825690, *2 (S.D.N.Y. 2000) ("[t]he most important factor in favor of appointing an expert is that the case

involves a complex or esoteric subject beyond the trier-of-fact's ability to adequately understand without expert assistance") (quoting 29 C. Wright & V. Gold, Federal Practice and Procedure § 6304 (1997)).  The Court should "bear in mind the substantial expense that defendants may have to bear if the [c]ourt appoints an expert in a case where . . . one of the parties is indigent." *Muhammad v. Wright*, 2009 WL 3246731, *1 (W.D.N.Y. 2009).  Considering the substantial costs that may result, the Court's appointment of expert witnesses should be used sparingly.  *Id.* (citing *Benitez v. Mailloux*, 2007 WL 836873 at *2).  "The enlistment of court-appointed expert assistance under Rule 706 is not commonplace," and courts appoint experts under Rule 706 "relatively infrequent[ly]."  *In re Joint E. & S. Dists. Asbestos Litig.*, 830 F. Supp. 686, 693 (E.D.N.Y. 1993).  "[M]ost judges view the appointment of an expert as an extraordinary activity that is appropriate only in rare instances."  *Id.* (citations and quotations omitted).  In addition, "the mere fact that [a] [p]laintiff has been permitted to proceed . . . *in forma pauperis* entitles him only to the right to proceed without [the] prepayment of filing fees and the cost of service." *Benitez*, 2007 WL 836873 at *1.  Simply stated, *in forma pauperis* status "does not authorize payment or advancement of discovery expenses by the court."  *Boyd v. Deasis*, 2020 WL 3566636, *2 (W.D.N.Y. 2020) (quotations and brackets omitted); *Graves v. Corr. Med. Serv.*, 2015 WL 1823456, *9 (W.D.N.Y. 2015) ("the plain language of section 1915 does not provide for the appointment of expert witnesses to aid an indigent litigant") (quotations and brackets omitted), *aff'd*, 667 F. App'x 18 (2d Cir. 2016) (summary order).

   The issues in this case do not appear esoteric or medically complex, and plaintiffs themselves will be able to testify about any emotional distress and related symptoms they experienced following or resulting from defendants' conduct.[3]  Relatedly, plaintiffs are capable

---

[3] Plaintiffs' papers mention the need to investigate – and show the jury – the degree of suffering Hill endured as a result of allegedly false information provided by the confidential informant(s).  (*See* Docket # 126 at

of utilizing available discovery tools to obtain information about the jail's policies and procedures, as well as the manner in which County defendants interpreted them (*see* Docket # 137 at 7).  For these reasons, the Court does not find that appointment of an expert witness is necessary at this time.[4]  Should the Court later determine that appointment would be appropriate, it may do so at that time.  Accordingly, plaintiffs' motion is denied without prejudice.[5]  *See DeJesus v. Malloy*, 2020 WL 5554518, *2 (W.D.N.Y. 2020) (denying appointment of medical expert witness because alleged injuries from pat-frisk were "discrete" and not "medically complex"); *Dowdell v. City of Rochester*, 2013 WL 5504145, *2-3 (W.D.N.Y. 2013) (denying appointment of psychiatric expert witness where plaintiff allegedly sustained psychological injuries during arrest).

---

2-3).  Of course, the critical inquiry is not whether the informant(s) provided false information; rather, the relevant questions are whether defendants – considering the information known to them at the time – used excessive force and denied Hill due process in connection with his disciplinary proceedings.  *See, e.g., Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015) ("[to prove excessive force,] a pretrial detainee must show . . . that the force purposely or knowingly used against him was objectively unreasonable[;] . . . objective reasonableness turns on the facts and circumstances of each particular case[;] [a] court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight[;] [a] court must also account for the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in th[e] judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security[;] [c]onsiderations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting") (internal quotations and citations omitted).

   [4] To the extent plaintiffs request an evidentiary hearing on this motion (Docket # 137 at 4), that request is likewise denied as unnecessary.

   [5] To the extent that plaintiffs' motion may be interpreted as seeking authorization for a medical examination of Hill pursuant to Rule 35 of the Federal Rules of Civil Procedure, such request is also denied.  Rule 35 generally governs requests made by one party to require another party to submit to a medical examination.  *See* Fed. R. Civ. P. 35(a); *see Smith v. Carroll*, 602 F. Supp. 2d 521, 526 (D. Del. 2009) ("Rule 35, however, does not vest the court with authority to appoint an expert to examine a party [even an indigent inmate] wishing an examination of himself").  Although plaintiff has the right to hire his own expert, "no civil litigant, even an indigent one, has [the] legal right to [a medical examination at taxpayer expense]."  *Smith v. Carroll*, 602 F. Supp. 2d at 526; *accord Brown v. United States*, 74 F. App'x 611, 614 (7th Cir. 2003) (court properly denied indigent inmate's request to compel government to bear cost of hiring expert to testify on his behalf), *cert. denied*, 540 U.S. 1132 (2004).

## II.    <u>**Motions Related to Hill's Deposition**</u>

Defendants attempted to depose Hill on June 9, 2022, but various disputes arose during the course of the examination that caused counsel to suspend the deposition.  (*See* Docket # 145-2).  The aborted deposition is the subject of several filings, including plaintiffs' motion to compel and for sanctions[6] (Docket # 141) and County defendants' cross-motion for a special master to supervise plaintiffs' depositions (Docket # 145).

Before appointing a special master, "the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense." Fed. R. Civ. P. 53(a).  Here, plaintiffs are proceeding *in forma pauperis* (Docket # 15), and County defendants have not stated that they are willing to pay the full expenses for a special master.  Moreover, the parties should not need oversight to complete the remaining depositions, and the Court thus denies County defendants' cross-motion for the appointment of a special master to supervise depositions.

As counsel for defendants correctly advised Hill during his deposition, relevancy may be a basis for objecting to a question but not for refusing to answer.  *See* Fed. R. Civ. P. 30(c)(2) ("[a]n objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection").  Specifically, if a deponent believes that a question seeks irrelevant or inadmissible testimony, he or she should

---

[6] Plaintiffs' motion papers are not entirely clear as to the relief they seek.  Plaintiffs suggest that counsel for defendants should be sanctioned for their conduct at the deposition and for refusing to confer about discovery disputes.  (Docket # 141 at 10).  They also raise issues about facts and theories of the case, but those are issues that do not warrant judicial intervention.  (Docket # 148 at 4).  County defendants interpret plaintiffs' papers to raise discovery disputes over documents and information mostly concerning the confidential informant(s).  (Docket # 145-4 at 8-10).  To the extent plaintiffs raise discovery disputes in their initial motion papers, or in reply that relate to disputes raised in other pending motions, the Court addresses those issues *infra*.

concisely note the objection and answer the question.[7]  *See id.*  For example, in response to

questions concerning Hill's prior convictions, the names of each facility in which Hill was

incarcerated, and the circumstances of his disciplinary infractions or convictions relating to

contraband, Hill should have objected to any questions he believed were irrelevant and

proceeded to answer the question.  *See*, *e.g.*, *Gould Invs., L.P. v. Gen. Ins. Co. of Trieste &*

*Venice*, 133 F.R.D. 103, 104 (S.D.N.Y. 1990) ("all objections made at the time of the

examination shall be noted and that evidence objected to shall be taken subject to objections. . . .

[i]t is not the prerogative of counsel [or a *pro se* plaintiff], but of the court, to rule on

objections") (internal quotation omitted); *Maldonado v. Srour*, 2015 WL 5098617, *2 (E.D.N.Y.

2015) (rejecting argument that plaintiff attempted to annoy, embarrass, or oppress the deponent

by asking questions about personal information not connected to the claims because "[l]ack of

relevancy is not a proper ground for instructing a witness not to answer deposition questions")

(internal quotations and citation omitted).  Of course, the Court expects defense counsel to ask

only questions which counsel in good faith believes are relevant.[8]

   Few exceptions exist to the general rule requiring a deponent to answer the

questions asked at a deposition, notwithstanding an interposed objection.  For example, a

deponent may decline to answer questions that seek privileged information as to which the

deponent plans to seek a protective order.  Fed. R. Civ. P. 30(c)(2) ("[a] person may instruct a

deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

ordered by the court, or to present a motion under Rule 30(d)(3)").  In his deposition, Hill raised

---

[7]  A deposition is not the proper setting in which to argue about discovery disputes, such as defendants' alleged failure to produce documents related to the subject matter of the questions.  (*See*, *e.g.*, Docket ## 148 at 3, 4; 145-2 at 24, 27-29).  Regardless of whether certain documents have been produced, a deponent must answer the questions to the best of his or her ability.

[8]  The relevance of questions about Hill's daughter and granddaughter, unlike other lines of inquiry, is not readily apparent.

privilege concerns in response to questions about a conversation he apparently had with a mental health counselor.  (Docket # 145-2 at 32-33).  To the extent defendants wish to pursue this line of questioning, they should articulate the questions on the record, and Hill may determine whether to object and refuse to answer on the grounds of psychotherapist-patient privilege.  "Thereafter, the parties may resolve the dispute in one of two ways.  First, the deponent may seek a protective order pursuant to Rules 26(c) and 30(d).[9]  Alternatively, the party taking the deposition may move pursuant to Rule 37(a)(2)(B) to compel the testimony it seeks."  *Luc Vets Diamant v. Akush*, 2006 WL 258293, *1 (S.D.N.Y. 2006).

The Court denies plaintiffs' requests for sanctions, attorneys' fees, an evidentiary hearing, and an order describing the bounds of depositions[10] and County defendants' cross-motion for a special master to supervise plaintiffs' depositions.  This Court expects the parties and counsel to adhere to the applicable rules governing depositions outlined above, as well as general rules of civility.  Failure to do so may result in the imposition of sanctions.  *See* Fed. R. Civ. P. 30(d)(2) ("[t]he court may impose an appropriate sanction – including the

---

[9]  "[I]t is well-established in this Circuit that 'the party invoking a privilege bears the burden of establishing its applicability to the case at hand.'"  *Kiobel v. Royal Dutch Petroleum Co.*, 2005 WL 1925656, *3 (S.D.N.Y. 2005) (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003)).  In order for the psychotherapist privilege to apply, the party seeking its protection must establish that the communications: (1) occurred between the individual and a licensed medical professional; (2) were made in the course of diagnosis or treatment; and (3) were made with the expectation that they would be kept confidential.  *See Doe v. Sarah Lawrence Coll.*, 2021 WL 197132, *6 (S.D.N.Y. 2021) ("[t]he psychotherapist-patient privilege only applies to (1) confidential communications, (2) between a licensed mental health professional and his or her patients, (3) in the course of diagnosis or treatment") (emphasis omitted).  Hill thus will need to provide information sufficient to establish each element of the psychotherapist-privilege – including identification of the parties to the communication, information identifying the subject of the communication, and the basis for Hill's expectation of privacy – to permit the Court to evaluate whether the communication was confidential and whether it was made in the course of diagnosis and treatment.

[10]  Any request for sanctions based on defendants' failure to confer at the deposition about discovery disputes (*see* Docket ## 143 at 30; 148 at 2-3) is denied.  Although the Court denied plaintiffs' previous motions on the grounds that the parties had not conferred, it did not order that the required conferral take place during Hill's deposition.

reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent").

County defendants' cross-motion to extend the deadline to complete depositions is granted, and the parties are directed to notify the Court in writing by **March 27, 2023**, to advise of the arrangements for the party depositions, including the date, time, location, and length of the examination.


III.   <u>**Motion in Limine**</u>

Plaintiffs seek an order precluding the admission at trial of evidence relating to several issues.  (Docket # 143 at 1-12).  They also seek an order precluding or restricting cumulative witnesses and permitting plaintiffs to treat defendants and "all defense witnesses" as hostile witnesses.  (*Id.* at 11-13).  Defendants oppose this motion as both procedurally premature and substantively meritless.  (Docket # 149-7).

County defendants are correct that plaintiffs' in limine motion is premature. Generally, "[i]n limine motions deal with evidentiary matters and are not to be filed until the eve of trial," *Jones v. Harris*, 665 F. Supp. 2d 384, 404 (S.D.N.Y. 2009), so that the trial court may resolve admissibility challenges, *Cannistraci v. Kirsopp*, 2012 WL 2089687, *2 (N.D.N.Y. 2012) ("[a] court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds[;] . . . [c]ourts considering a motion *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context").  *See also Sahiti v. Tarentum, Ltd.*, 2021 WL 3115813, *7 (S.D.N.Y. 2021) (concluding that pending motions in limine were premature, even at summary judgment stage), *reconsideration denied*, 2022 WL 657223 (2022).

Likewise, arguments about treatment of witnesses as hostile or exclusion of them as cumulative are best addressed during trial.  *See Ali v. Connick*, 2016 WL 3002403, *4 (E.D.N.Y. 2016) ("the court cannot predict when [d]efendants' evidence will become cumulative because the court does not know what evidence [d]efendants will present[;] [s]hould [d]efendants cross the line at trial, [p]laintiff should renew his challenge then"); *Harewood v. Braithwaite*, 2013 WL 5366391, *3 (E.D.N.Y. 2013) (reserving on motion to treat witness as hostile "until such time the witness evinces hostility, bias, or recalcitrance during her testimony").  Therefore, the Court denies plaintiffs' motion in limine without prejudice.[11]

## IV.    **Discovery-Related Issues**

Plaintiffs' pending motions papers are replete with challenges to many of County defendants' responses to plaintiffs' discovery requests.  (*See*, *e.g.*, Docket ## 141 at 7, 11; 148 at 4-7; 143 at 13-30; 152 at 6-25).  Because plaintiffs have attempted to confer about the disputes,[12] the Court addresses those disputes below.

### A.    **Disputes Previously Addressed in this Court's March 8, 2022 Decision and Order (the "March 8 Order")**

In June and July 2021, Hill filed motions challenging the adequacy of the majority of defendants' discovery responses and seeking sanctions.  (Docket ## 86, 88).  Because the

---

[11]  Plaintiffs' motion in limine (Docket # 143 at 13-30) also includes arguments more accurately viewed as requests for a court order to compel.  The Court addresses those disputes below.

[12]  Both sides apparently anticipated discussing discovery disputes on the day of Hill's scheduled deposition.  (*See* Docket ## 138 at 2 (indicating to the Court that defendants "hop[ed] to use this date . . . as an opportunity to confer"); 141 at 6 (arguing that the parties stipulated "that the deposition would be utilized to confer on discovery")).  Although the record is unclear as to whether a conferral in fact occurred, it is apparent that Hill attempted to confer that day.  (*See* Docket ## 145-2 at 50-51 (Hill stating that he wanted to discuss discovery issues on the record and defendants responding that Hill would have to pay the stenographer for transcribing that discussion); 152 at 18 (plaintiffs asserting that defendants refused to confer off the record); 158 at ¶ 33 (County defendants claiming that conferral occurred after the deposition was suspended)).

record did not establish that the parties had meaningfully conferred prior to filing those motions, the Court denied the motions and instructed Hill to confer with counsel before seeking relief. (Docket # 119 at 9-10).  The Court nonetheless addressed certain of the disputes in its March 8 Order in an effort to assist the parties with their conferral process.  (*Id.* at 10-17).  Plaintiffs' current motions contend that County defendants' responses to some of those discovery disputes remain insufficient.[13]

### 1. <u>Kevin Payne's Responses to Requests for Admissions</u>

Plaintiffs again dispute the adequacy of defendant Kevin Payne's responses to three of plaintiffs' requests for admissions and seek associated sanctions.  (*Compare* Docket # 88 at 7-9 *with* Docket # 143 at 15-18).  In its March 8 Order, the Court stated that Requests Nos. 5 and 6 were unduly confusing and complex and that plaintiffs' challenge to Payne's response to Request No. 8 was "nothing more than [a] substantive factual dispute[]" that "does not justify judicial intervention or relief."  (*See* Docket # 119 at 16).  On this record, plaintiffs' request for additional responses, attorneys' fees, or sanctions is denied.

### 2. <u>First Set of Discovery Demands</u>

This Court also previously addressed three requests that plaintiffs raise in the pending motions – specifically Requests Nos. 5, 10, and 11 contained in plaintiffs' First Set of Discovery Demands – as to which the Court in its March 8 Order County urged defendants to provide supplemental information or responses.  (Docket # 119 at 13-14).  Requests Nos. 5 and 11[14] seek all grievances filed by plaintiffs concerning their right to marry and Hill's tier hearing

---

[13]  Because the Court's discussion in its March 8 Order was offered as guidance, the Court denies plaintiffs' requests for sanctions on the grounds that County defendants failed to comply or deliberately disregarded the Order. (*See*, *e.g.*, Docket # 152 at 16-17).

[14]  Request No. 11 seeks Hill's "Tier Hearing appeals, answering decisions or any other formal response." (Docket # 100-2 at 3).  The Court's resolution of this dispute applies equally to the dispute about plaintiffs' Conferral Demands Nos. 21 and 22, which seek "[p]laintiffs' disciplinary appeals challenging the disciplinary

appeals.  (*See* Docket # 100-2 at 5).  County defendants originally responded by stating that they had provided all responsive documents and referred plaintiffs to their Rule 26(a)(1) initial and supplemental disclosures.  (Docket # 100-3 at 5, 7).  Plaintiffs disputed that contention, and the Court in its March 8 Order advised County defendants to confer with plaintiffs about the specific documents allegedly not produced and, if the documents had been produced, to identify where within the production the documents were located or, if they had not been produced, to produce them or to confirm in writing that the documents were not in their possession, custody, or control.  (Docket # 119 at 13).

County defendants supplemented their responses by simply confirming that they had diligently searched for responsive documents and did not have any additional documents.  (Docket # 131 at 5, 7).  Plaintiffs maintain that that County defendants must have destroyed, misplaced, or lost responsive documents – which were required by policy to exist – and request that the Court compel them to provide the documents or impose sanctions.  (Docket ## 143 at 27-29; 152 at 7, 9, 10, 25 (seeking a special master to determine the veracity of County defendants' contention that they do not have copies of certain documents)).

County defendants' supplemental responses do not comport with the Court's previous guidance.  They do not make clear, first, whether County defendants conferred with plaintiffs about the allegedly missing documents[15] and, second, whether County defendants contend that such documents were previously produced or are not in their possession, custody, or

---

hearing denial of witnesses and documents rendered by Christopher Wilson" and "Kevin Payne's disciplinary appeal decision and all documents attached thereto."  (Docket # 140 at 14-15).

[15]  The alleged missing documents include plaintiffs' initial grievance and response about the right to marry – as opposed to grievance documents about the failure to respond to such grievance.  (Docket # 152 at 7; *see also* Docket # 86 at 16-17).  They also include copies of plaintiffs' disciplinary appeals, the chief jail administrator's decisions, and the documents attached to them, such as Hill's document and witness requests.  (*See* Docket # 152 at 9, 24-25).

control.  If the documents were previously produced, County defendants have failed to identify the particular responsive documents by bates number.  County defendants are directed to comply with the Court's previous guidance by no later than **March 27, 2023**.

Plaintiffs' Request No. 10 seeks "all log book entries, reports, files, memorandums and communications concerning each complaint/incident mentioned in the Plaintiffs' grievances."  (Docket # 100-2 at 3).  In his prior motions, Hill narrowed this request to all "G-block log book entries" for November 7 and 8 and alleged that County defendants had produced a version of the logbook entries that had been "doctored."  (Docket # 86 at 17-18).  The Court advised the parties to confer over any redactions made to the logbook entries, as well as the justification for any such redactions, and to provide the Court with unredacted copies. (Docket # 119 at 14).

In their supplemental responses, County defendants stated that they provided copies of the Officer Activity Logs for Blocks E, F, and G on November 7 and 8, 2017 but redacted "the names of inmates in order to preserve their privacy and ensure the security of the inmates and Niagara County employees."  (Docket # 131 at 7).  They did not, however, provide the Court with copies of the unredacted logbooks and proposed redactions and are directed to do so by no later than **March 27, 2023**

Plaintiffs challenge the redactions on the grounds that they should be permitted to learn names of possible witnesses.  (Docket # 152 at 8).  County defendants are instructed to supplement their discovery responses with their justifications for the redactions.  If plaintiffs disagree that the redactions are appropriate, they may move for an order to disclose the unredacted documents by the deadline of **May 31, 2023** for filing motions to compel.

13

On this record, plaintiffs' request for sanctions, including adverse inference instructions, relating to County defendants' supplemental responses is denied without prejudice to renewal in the event County defendants do not comply with this Court's instructions.

### 3.     Photographs of Isolation and Negative Pressure Cells and Related Requests

According to plaintiffs, after Hill was extracted from his cell on November 7, 2017, he was immediately placed in an isolation cell behind a metal door.  (*See* Docket # 100-3 at 20).  Hill was thereafter transferred to a negative pressure cell.  (*See* Docket # 152 at 16).  Plaintiffs' Demand for Photographs Requests Nos. 2 and 3 request pictures of these cells.  This Court previously acknowledged that "there are no conditions of confinement claims pending in this action" and thus denied plaintiffs' demands for photographs of the negative pressure cell.  (Docket # 119 at 11-12).  The Court did advise County defendants to provide photographs, or allow plaintiffs or a designee to take photographs, of the cell in which plaintiff was immediately housed after his November 7, 2017 extraction.  (Docket # 119 at 15).

In their Conferral Demands,[16] plaintiffs persist in their requests for photographs of both cells.  (Docket # 140 at 16-17).  County defendants have responded by directing plaintiffs to photographs taken on March 29, 2022, of the negative pressure cell.  (Docket # 140 at 16-17).  County defendants appear to have misunderstood the Court's prior instruction.  They were advised to provide photographs of, or allow plaintiffs to photograph, the cell in which plaintiff was *immediately housed after his extraction* – which the Court understands was the isolation cell, not the negative pressure cell.  (Docket # 119 at 15).  Because County defendants attempted to comply with this Court's prior decision, sanctions are not warranted (*see* Docket # 152 at 16

---

[16] After the Court issued its March 8 Order, County defendants served supplemental discovery responses. (Docket ## 131-134).  Thereafter, plaintiffs served "Conferral Demands," to which County defendants responded on June 7, 2022.  (*See* Docket ## 138, 140).

(arguing that "defendants . . . deliberately refuse[d] to produce" the requested photographs)), but photographs of the cell into which Hill was immediately placed following the cell extraction must be provided to plaintiffs by no later than **March 27, 2023**.

Plaintiffs also seek documents related to negative pressure cells, such as "all documents authoriz[ing] said cell to be utilized as a[] SHU cell" (Docket # 140 at 17) or any "memorandum, report, policy or manual defining/describing what is a Negative Pressure Cell and its purpose" (Docket ## 100-2 at 5; 152 at 14-15).  County defendants have stated that they possess no responsive documents (Docket ## 131 at 11; 140 at 17), a representation that plaintiffs dispute (Docket # 152 at 15).

As the Court has already observed, no conditions of confinement claims are before the Court in this action (Docket # 119 at 12);[17] thus, plaintiffs have not articulated a basis for believing that their requests for photographs of, or documents related to, negative pressure cells are relevant.  Plaintiffs' request for associated sanctions is denied.  (*See* Docket # 152 at 15).

### 4. Requests Concerning the Confidential Informant(s)

Many of plaintiffs' challenges relate to County defendants' responses to demands about the confidential informant(s) who provided information to Niagara County Jail employees on or about November 7, 2017, concerning Hill's alleged possession and/or distribution of contraband (the "Confidential Informant(s)").[18]  (Docket ## 143 at 19-22; 152 at 16-24).  Those requests are discussed below.

---

[17]  Despite the absence of such a claim, plaintiffs allege conclusorily that confinement in the cell was cruel and inhumane.  (Docket # 100-3 at 21).

[18]  The record does not reveal whether there were multiple Confidential Informants.  (*See* Docket # 16-1 at 26 (indicating on a form signed by defendant Kevin Payne on November 27, 2017, that "[i]nformation from multiple confidential informants ha[d] been received . . . that [Hill was] in possession of dangerous contraband or ha[d] been in possession of dangerous contraband while incarcerated in the Niagara County Jail).  *But see* Docket # 149-5 at

As the Court observed in its March 8 Order:

> [I]nformation as to the informants' reliability may indeed be
> relevant insofar as any defendants seek to justify the type or
> amount of force used during the cell extraction, the denial of
> contact visits, or the issuance of the misbehavior report based upon
> information learned from confidential informants.  The parties
> should discuss whether and the extent to which information
> relating to the confidential informants is relevant to the claims and
> defenses asserted in this litigation.

(Docket # 119 at 11).[19]  Despite that language, County defendants objected to the discovery

requests relating to the Confidential Informant(s) as seeking "materials and/or information that is

confidential and/or privileged" insofar as they request "another inmate's records which are

deemed confidential based on the interests of prison safety, security, and the need for

governmental secrecy."  (*See* Docket ## 140 at 4-9; 132).  They also objected on the grounds that

the requests seek irrelevant information because Hill was found not guilty of possessing

contraband.  (Docket ## 140 at 4-9; 132).

      The Court disagrees with and overrules County defendants' relevance objection.

This Court's March 8 Order articulated its view, which remains unchanged, that information

concerning the Confidential Informant(s), his or their reliability, and his or their statements about

Hill are generally relevant insofar as defendants considered and relied upon that information in

their interactions with Hill, particularly in determining the manner in which to conduct the cell

extraction and the force to be employed.  Indeed, review of the incident reports suggests that

---

2-5, 23 (though redacted, appearing to refer to a singular Confidential Informant)).  Although plaintiffs' requests
pertained to a named suspected Confidential Informant, defendants have declined to identify the Confidential
Informant(s).  In responding to plaintiffs' discovery requests, County defendants should construe Conferral
Demands Nos. 1, 2, 3, 4, 7, 10 and plaintiffs' Second Set of Discovery Demands Nos. 1, 2, 3, 4, 5 as seeking
information about all the Confidential Informant(s) (as defined above), rather than the named suspected informant.

    [19]  The Court rejected plaintiffs' contention that information as to the confidential informants' reliability is
relevant to assess whether probable cause existed for the cell search because the Fourth Amendment's probable
cause requirement is inapplicable to prison cell searches.  (*Id.*).

information provided by informant(s) contributed to the decision to employ the techniques used in the extraction.[20]  Therefore, County defendants' argument that plaintiffs have failed to meet their burden to establish relevance (Docket # 145-4 at 6, 10) is rejected.

As to County defendants' objection that the information sought may jeopardize prison safety and security, the Court will permit defendants to redact the name(s) and Department Identification Number(s) ("DIN") of the Confidential Informant(s).  Should County defendants believe that additional redactions are necessary as to any of the documents defendants produce concerning the Confidential Informant(s), they must provide the Court with unredacted copies of the material and provide plaintiffs with redacted copies, along with their reasoning for the redactions, by no later than **March 27, 2023**.  Having addressed County defendants' objections, I turn to plaintiffs' requests.

Conferral Demands Nos. 1 and 8 request production of prior communications by the Confidential Informant(s) to the Niagara County Jail about misconduct of other inmates at the jail.  The requests also seek documents and reports reflecting any investigations conducted concerning the accuracy of information provided by the Confidential Informant(s) about Hill or other inmates.  (Docket # 140 at 4, 7).  This request is overbroad as drafted.  Rather, by **March 27, 2023**, County defendants are directed to provide documents or reports during the three-year period preceding Hill's cell extraction that discuss, analyze, or address the *credibility* of

---

[20]  In assessing an excessive force claim, "a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer."  *Kingsley v. Hendrickson*, 576 U.S. at 399.  Therefore, requests concerning what the defendants knew or believed at the time they used force are plainly relevant.  (*See*, *e.g.*, Docket # 149-5 at 2, 3 (stating that defendant James Payne advised officers to use "extreme caution" considering the possible contraband and CERT officers "donned safety gear for the move"; "[d]ue to the actions of inmate Hill and the possibility of him trying to locate a weapon, CERT was ordered into his cell to secure him"); *id.* at 4 ("[i]t was ordered that CO's [*sic*] Staley, Peloquin and LaTona put on their extraction gear as Michael Hill potentially had a weapon and was incarcerated on felony assault charges"); *id.* at 23 ("[d]ue to our intelligence . . . , his non-compliance, and propensity for violence[,] I exposed him to a one second burst of Oleoresin Capsicum (OC)[;] . . . Lt. Greenwald [ordered] to secure [Hill] in the Restraint Chair (RC) due to his non-compliance and potential possession of a dangerous instrument")).

information provided by the Confidential Informant(s) concerning any inmate misconduct or confirm in writing that a diligent search has been conducted and responsive documents are not in their possession, custody, or control.[21]  To the extent County defendants have already produced responsive documents, they are directed to identify such documents by bates numbers.

Conferral Demand No. 2 and Request No. 2 of plaintiffs' Second Set of Discovery Demands seek documents reflecting the reasons any of the Confidential Informant(s) were on Hill's "keep away" list at the jail.  (Docket ## 132 at 4; 140 at 4).  The Court finds that this request is relevant to the extent the Confidential Informant(s) were placed on Hill's keep away list *prior to* the cell search and extraction.  Therefore, by **March 27, 2023**, County defendants are directed to produce responsive documents concerning any of the Confidential Informant(s) on Hill's keep away list during the three-year period preceding November 7, 2017, or confirm in writing that a diligent search has been conducted and responsive documents are not in their possession, custody, or control.[22]  To the extent County defendants have already produced responsive documents, they are directed to identify such documents by bates numbers.

Conferral Demands Nos. 3, 7 and 8 and Requests Nos. 1 and 5 of plaintiff's Second Set of Discovery Demands seek reports and investigations – and statements made by the Confidential Informant(s) – about the possession of contraband by Hill and/or the Confidential Informant(s) on or about November 7, 2017.  (Docket ## 132 at 3, 6; 140 at 5, 7).  Request No. 1 of plaintiffs' Second Set of Discovery Demands also seeks statements made by the Confidential

---

[21] Request No. 5 of plaintiffs' Second Set of Discovery Demands seeks "all follow up investigative reports on the informants['] allegations."  (Docket # 132 at 6).  Because the relevant inquiry concerns defendants' knowledge of the reliability of the Confidential Informant(s) prior to the search and extraction on November 7, 2017, this request is not relevant insofar as it seeks information after Hill's cell extraction.

[22] Of course, as stated *supra*, if County defendants believe redactions are appropriate for safety and security reasons, they should make the redactions, produce the redacted documents to plaintiffs, along with the justification for the redactions, and provide unredacted copies to the Court.

Informant(s) to Niagara County Jail personnel about Hill's cell extraction.  (Docket # 132 at 3).

I find that these requests seek relevant documents and direct the County defendants to produce

responsive documents by **March 27, 2023**, or confirm in writing that a diligent search has been

conducted and responsive documents are not in their possession, custody, or control.  To the

extent County defendants have already produced responsive documents, they are directed to

identify such documents by bates numbers.

Relatedly, Request No. 4 of plaintiffs' Second Set of Discovery Demands seeks

"all the disciplinary actions such as reports[,] to-from communications[,] and employees[']

official statements concerning information received from [the Confidential Informant(s)] to

coordinate [a] jail bust for contraband smuggled into the prison."  (Docket # 132 at 5).  This

request is difficult to decipher.  That said, by **March 27, 2023**, County defendants are directed to

provide copies of statements or reports that *they made* reflecting or analyzing the information

provided by the Confidential Informant(s) regarding Hill's alleged possession and/or distribution

of contraband or confirm in writing that a diligent search has been conducted and responsive

documents are not in their possession, custody, or control.  To the extent County defendants have

already produced responsive documents, they are directed to identify such documents by bates

numbers.

Conferral Demand No. 4 and Request No. 6 of plaintiffs' Second Set of

Discovery Demands[23] seek documents reflecting the commissary purchases and financial

transactions of the Confidential Informant(s) for the month of November 2017.  (Docket ## 140

at 6; 132 at 6).  In the event that County defendants reviewed or were provided such information

prior to Hill's extraction, by **March 27, 2023**, they should provide responsive documents or

---

[23]  To the extent plaintiffs also demand that County defendants "verify the items bought and amount spent"
(Docket # 132 at 6), that request is denied.

confirm in writing that a diligent search has been conducted and responsive documents are not in their possession, custody, or control.  To the extent County defendants have already produced responsive documents, they are directed to identify such documents by bates numbers.

Conferral Demand No. 10 seeks documents showing the housing locations of Confidential Informant(s) from March 16, 1990, to August 24, 2017.  (Docket # 140 at 9).  In the event that County defendants investigated or determined on or before November 7, 2017, whether Hill and any of the Confidential Informant(s) had previously been incarcerated in the same facility at the same time, they are directed to produce any documents reflecting such investigation or review by **March 27, 2023**, or confirm in writing that a diligent search has been conducted and responsive documents are not in their possession, custody, or control.  To the extent County defendants have already produced responsive documents, they are directed to identify such documents by bates numbers.

Conferral Demand No. 9 and Requests Nos. 1 and 4 of plaintiffs' Second Set of Discovery Demands seek copies of agreements made with or promises made to the Confidential Informant(s) for information provided about matters occurring in the jail, including but not limited to information on or about November 7, 2017.  (Docket ## 132 at 3, 5; 140 at 8).  The request is overbroad.  By **March 27, 2023**, County defendants are directed to provide plaintiffs with responsive documents concerning agreements or promises concerning information provided by the Confidential Informant(s) about Hill on or about November 7, 2017, or confirm in writing that a diligent search has been conducted and responsive documents are not in their possession, custody, or control.  To the extent County defendants have already produced responsive documents, they are directed to identify such documents by bates numbers.

20

Request No. 3 of plaintiffs' Second Set of Discovery Demands seeks all disciplinary reports from 2017 concerning the Confidential Informant(s), the disposition of all charges, and any sanctions imposed.  (Docket # 132 at 4).  Again, this request is overbroad.  By **March 27, 2023**, County defendants are directed to provide responsive documents for the three-year period preceding November 7, 2017, that relate to charges of false statements or acts of dishonesty by the Confidential Informant(s) or confirm in writing that a diligent search has been conducted and responsive documents are not in their possession, custody, or control.  To the extent County defendants have already produced responsive documents, they are directed to identify such documents by bates numbers.

Because the March 8 Order provided guidance (but not directives) to the parties to assist in their conferral about these demands, this Court denies plaintiffs' request for sanctions, including attorneys' fees (*see*, *e.g.*, Docket ## 143 at 14, 20; 152 at 17, 22-24), based on County defendant's responses to these demands.

### B.    Additional Discovery Disputes

Request No. 12 of the First Set of Discovery Demands seeks "all communications, appeals, complaints and notice[s] of Defendants Longhren [*sic*] and Voutour [*sic*] *and any response* concerning Plaintiffs['] treatment at Niagara County Jail from October 2017 through September 2018."  (Docket # 100-2 at 3-4 (emphasis added)).  Although plaintiffs' request is not a model of clarity, County defendants contend that they have produced all responsive documents.  (Docket # 100-3 at 7-8).  Plaintiffs counter that County defendants have not produced responses from Kevin Payne to Commissioner Loughren, although they do not articulate a factual basis for believing that Kevin Payne responded directly to Loughren's

communications.[24]  (Docket # 152 at 10-11).  If County defendants have already produced all responsive documents,[25] they should identify those documents by bates number by **March 27, 2023**.  In the event that County defendants have not produced responses by Kevin Payne to Commissioner Loughren, they should produce the documents; otherwise, they should confirm in writing that such documents are not within their possession, custody, or control.

Second, Request No. 19 of plaintiffs' First Set of Discovery Demands requests all inmate witness statements concerning the November 7, 2017 extraction of Hill.  (*See* Docket # 100-3 at 9).  County defendants replied that they have no documents responsive to this demand other than what may have been contained in Hill's jail file that was previously produced.  (Docket # 131 at 9; *see also* Docket # 140 at 13).  Plaintiffs reason that County defendants must be withholding evidence because Payne, in his response to Hill's appeal about witnesses, indicated that inmates made statements about the incident.  (Docket # 152 at 14).  Review of that document, however, shows that Payne simply responded that Hill's "[r]equest to review video recordings and inmate statements is denied."  (Docket # 16-1 at 23).  It did not indicate that such written statements existed.[26]  On this record, plaintiffs' request for sanctions is denied.  If plaintiffs have a factual basis to believe that County defendants have withheld responsive documents, they should confer with defendants.  The Court also directs County defendants by no

---

[24]  For this reason, the Court disagrees with plaintiffs that County defendants' failure to produce such documents evidences bad faith (*see* Docket # 152 at 11) and denies plaintiffs' request for sanctions.

[25]  The Court interprets the request to include documents that reflect actions Kevin Payne took in response to Commissioner Loughren's communications.

[26]  The Court has also reviewed the form that reflects Hill's charges, the disposition of those charges, and the sanctions imposed.  (Docket # 145-3 at 3).  The document states that certain sanctions were imposed "[b]ased on the inmates [*sic*] statements."  (*Id.*).  The hearing officer did not, however, check the box on the form indicating that he considered "[w]itnesses statement(s)," although he checked the box indicating that he considered "[i]nmate's statement(s)."  (*Id.*).

later than **March 27, 2023** to identify by bates numbers any responsive documents previously produced in Hill's jail file.

Conferral Demand No. 6 requests photographs of any contraband turned over by the Confidential Informant(s).[27]  (*See* Docket # 140 at 6).  County defendants object to this request as imposing an obligation beyond what the Federal Rules of Civil Procedure require since they do not possess any such photographs.  (*Id.*).  Although defendants are correct that they cannot be compelled "to produce that which does not exist," *Head v. Artus*, 2018 WL 635919, *3 (W.D.N.Y. 2018), Rule 34(a)(2) of the Federal Rules of Civil Procedure affords plaintiffs the right to request inspection of property possessed or controlled by the responding party, *see* Fed. R. Civ. P. 34(a)(2).  Accordingly, by **March 27, 2023**, defendants should permit Hill, Pittman, or an agreed-upon designee to inspect the contraband under appropriate supervision; alternatively, defendants may elect to take and provide photographs of the contraband.

Conferral Demand No. 20 seeks all written requests for witnesses and documents for the disciplinary hearing held on November 8, 2017.  (Docket # 140 at 13).  To the extent this demand overlaps with plaintiffs' First Set for Discovery Demands No. 11 and Conferral Demand No. 21 – regarding Hill's disciplinary hearing appeals, answering decisions, or any formal responses, including Hill's disciplinary appeal challenging the denial of witnesses and documents – the Court directs the parties to its discussion of those requests *supra*.  To the extent there was an *initial* request – rather than an appeal – related to witnesses and documents, County defendants must produce such documents.  To the extent County defendants have already

---

[27]  The demand also requests forms signed by any Confidential Informant(s) "verifying" the contraband. (*See* Docket # 140 at 6).  By **March 27, 2023**, defendants should produce any such documents or identify such documents by bates number.  They may redact any Confidential Informant's name or Department Identification Number ("DIN") but must provide unredacted copies of such documents to the Court.  If defendants do not possess any responsive documents, they must state that.

produced the documents, they should identify those documents by bates number.  In the event
such documents have not been produced, by no later than **March 27, 2023**, County defendants
should produce the documents or confirm in writing that such documents are not in their
possession, custody, or control.

Related to First Set of Discovery Demand No. 12, Conferral Demand No. 25
seeks Commissioner Loughren's communications to the county jail concerning the ongoing
disciplinary treatment of Hill from November 7, 2017 to February 4, 2018.  (Docket # 140 at 16).
County defendants objected to this request as more properly directed to Commissioner
Loughren.  (*Id.*).  County defendants' objection is improper.  They are directed to search for and
produce all responsive documents in their possession, custody, or control by **March 27, 2023**.  If
such documents have already been produced by County defendants, they must identify such
documents by bates numbers.[28]

Additionally, several of plaintiffs' motions refer to the body camera of defendant
Wilson that was allegedly recording on the day of the disciplinary hearing.  (Docket ## 141 at
11; 152 at 24).  Conferral Demand No. 23 relates to this alleged camera footage.  (*See* Docket
# 140 at 15).  County defendants responded by directing plaintiffs to all body camera footage
previously produced and confirmed that there is no additional body camera footage in their
possession, custody, or control that is responsive to this demand.  (*Id.*).  Hill claims that he told
defendant Wilson to turn on his body camera during the disciplinary proceeding, that Wilson
stated it was already recording, and that County defendants have deliberately destroyed this
evidence.  (Docket ## 143 at 27; 152 at 24).  If camera footage of the disciplinary proceedings

---

[28]  The Court's directives similarly apply to the parties' dispute about Conferral Demand No. 35, which
requests "[a]ll communication from Commissioner to [Chief] Payne concerning the plaintiffs['] complaints
regarding being denied their rights to marriage" and states that "[g]rievance decisions and appeals on marriage
grievances [have not been] produced."  (Docket # 140 at 19).

has already been produced by County defendants, they must identify by **March 27, 2023** where the footage may be found.  If it has not, County defendants are directed to search for and produce it if it is in their possession, custody, or control.  They must indicate if such footage once existed but cannot be located or produced; if so, they must provide the circumstances of its loss or destruction.

In the pending motions, plaintiffs also appear to challenge the accuracy of certain discovery responses.[29]  (*See*, *e.g.*, Docket # 141 at 11).  This decision properly addresses the adequacy, not the accuracy, of challenged discovery responses.  Moreover, insofar as plaintiffs' motions may be construed as requests for substantive rulings on objections, rather than fully-briefed requests for orders compelling production, that application is denied.  (*See*, *e.g.*, Docket # 143 at 26, 29, 30).  It is not the role of the Court to speculate on issues and arguments not explicitly before the Court.  Relatedly, the Court denies plaintiffs' request for a special master to review County defendants' responses.  (Docket # 152).  The purpose of a special master is not to investigate whether a party's discovery responses are truthful (*id.* at 3) or whether a party complied with his employer's document creation and retention policies (*id.* at 11-13, 25).

On this record, plaintiffs' requests for sanctions (*see*, *e.g.*, Docket ## 143 at 18, 29, 30; 152 at 5), including adverse inference instructions, relating to County defendants' discovery responses are denied without prejudice to renewal in the event that County defendants do not comply with the instructions herein.

---

[29]  Plaintiffs seek sanctions and an adverse inference instruction based upon County defendants' representation that they do not possess prior authorization forms relating to the strip search that occurred on November 8, 2017.  (*See* Docket # 143 at 24).  To the extent plaintiffs argue that jail policy required prior authorization, and the absence of such documentation amounts to spoliation, plaintiffs have made an insufficient showing.  Simply alleging that the document was required to exist does not prove that the document in fact existed and was improperly destroyed.  Plaintiffs' request for sanctions related to defendants' non-production of strip search authorization forms is denied on this record.

## V.    Motions to Extend Scheduling Order

County defendants request extensions of deadlines to complete plaintiffs' depositions and to file dispositive motions.  (Docket ## 145-4 at 17; 150-1 at ¶¶ 37-39).  Plaintiffs do not oppose those requests.  I find good cause exists to extend the scheduling order.  This Court's March 8, 2022 Amended Scheduling Order (Docket # 120) shall be amended as follows:

1.    By **March 27, 2023**, County defendants shall provide supplemental discovery responses as directed above.

2.    By **March 27, 2023**, defendants shall provide the Court with written notice of the arrangements for party depositions.

3.    All discovery in this case shall conclude on **May 15, 2023**.  All motions for protective orders or to compel discovery shall be filed on or before **May 31, 2023**.

4.    Plaintiffs shall identify any expert witnesses pursuant to Fed. R. Civ. P. 26(a)(2)(A) and provide reports pursuant to Rule 26(a)(2)(B) and/or disclosures pursuant to Rule 26(a)(2)(C) by **June 9, 2023**.  Defendants shall identify any expert witnesses and provide reports pursuant to Fed. R. Civ. P. 26 by **July 7, 2023**.  Parties shall complete all discovery relating to experts, including depositions, by **August 4, 2023**.

5.    All dispositive motions shall be filed no later than **September 8, 2023**.

**NOTE: If the dispositive motion is filed against a party who is appearing in this action _pro se_, the moving party must include the advisement set forth in the notice attached to this Order.**

6.      Responding papers are due by **October 6, 2023**.  Reply papers, if any, shall be filed by **October 20, 2023**.  The motion will be taken under advisement without oral argument.

7.      If no dispositive motions are filed, defense counsel shall notify the Court in writing on or before the dispositive motion deadline date.

8.      No extension of the above cutoff dates will be granted except upon written joint motion, filed prior to the cutoff date, showing good cause for the extension.

9.      **In accordance with Fed. R. Civ. P. 16(f), if a party or party's attorney fails to obey this scheduling order or fails to participate in good faith, this Court will enter appropriate sanctions against that party or that party's attorney.**


## CONCLUSION

For the reasons stated above, plaintiffs' motion for appointment of a special master **(Docket # 126)** is **DENIED**.  To the extent plaintiffs' remaining motions seek an order to compel **(Docket ## 141, 143, 152)**, they are **GRANTED in part and DENIED in part** as specified above; supplemental responses to plaintiffs' discovery demand are due on or before **March 27, 2023**.  To the extent the motions seek other relief **(Docket ## 141, 143, 152)**, they are **DENIED**.

County defendants' motion for appointment of a special master to supervise the remaining depositions **(Docket # 145)** is **DENIED**.  County defendants' motions for an extension of time to complete discovery **(Docket # 145)** and to file dispositive motions **(Docket # 150)** are **GRANTED**, and the March 8, 2022 Amended Scheduling Order (Docket # 120) is amended as specified above.

27

The Court directs the Clerk of the Court to amend the caption of the case to correct the spelling of defendant Thomas Loughren's name.

**IT IS SO ORDERED.**

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
        March 3, 2023

### *PRO SE* NOTICE

Plaintiff is hereby advised that the defendant has asked the Court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion.  **THE CLAIMS PLAINTIFF ASSERTS IN HIS/HER COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF HE/SHE DOES NOT RESPOND TO THIS MOTION** by filing his/her own sworn affidavits or other papers as required by Rules 56(c) and (e) of the Federal Rules of Civil Procedure.  An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial.

In short, Rule 56 provides that plaintiff may NOT oppose summary judgment simply by relying upon the allegations in the complaint.  Rather, plaintiff must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial.  Any witness statements, which may include plaintiff's own statements, must be in the form of affidavits.  Plaintiff may file and serve affidavits that were prepared specifically in response to defendant's motion for summary judgment.

Any issue of fact that plaintiff wishes to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by defendant.  If plaintiff does not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by defendant, the Court may accept defendant's factual assertions as true.  Judgment may then be entered in defendant's favor without a trial.

Pursuant to Rules 7(a) and 56(a) of the Local Rules of Civil Procedure for the Western District of New York, plaintiff is required to file and serve the following papers in opposition to this motion: (1) a memorandum of law containing relevant factual and legal argument; (2) one or more affidavits in opposition to the motion; and (3) a separate, short, and concise statement of the material facts as to which plaintiff contends there exists a genuine issue to be tried, followed by citation to admissible evidence.  In the absence of such a statement by plaintiff, all material facts set forth in defendant's statement of material facts not in dispute will be deemed admitted.  A copy of the Local Rules to which reference has been made may be obtained from the Clerk's Office of the Court.

If plaintiff has any questions, he/she may direct them to the Pro Se Office.

Plaintiff must file and serve any supplemental affidavits or materials in opposition to defendant's motion no later than the date they are due as provided in Rule 7(b) of the Local Rules of Civil Procedure for the Western District of New York.