UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL HILL and KAREN PITTMAN,

        Plaintiffs,

   -v-

THOMAS LOUGHREN,

        Defendant.
_____

**DECISION AND ORDER**

6:18-CV-6022 EAW

## INTRODUCTION

Plaintiff Michael Hill ("Hill"), who was a pretrial detainee at the Niagara County Jail (the "Jail") at the time of the events at issue in this action, and plaintiff Karen Pittman ("Pittman"), Hill's fiancée (collectively "Plaintiffs"), filed this *pro se* action under 42 U.S.C. § 1983. (Dkt. 1). After the Court screened the matter pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, Plaintiffs were permitted to proceed to service on six claims against six defendants (*see* Dkt. 22), but subsequently voluntarily dismissed their claims except against Thomas Loughren ("Defendant") (*see* Dkt. 172). The only claim that proceeded to service against Defendant was for denial of permission to marry. (Dkt. 22 at 24).

Currently pending before the Court are: (1) Plaintiffs' objections (Dkt. 191) to United States Magistrate Judge Marian W. Payson's Decision and Order dated March 3, 2023 (Dkt. 159); and (2) Defendant's motion for summary judgment (Dkt. 197). For the

- 1 -

reasons that follow, Plaintiffs' objections are denied and Defendant's motion for summary judgment is granted.

## PLAINTIFFS' OBJECTIONS

### I. Standard of Review

"When a party submits objections to a magistrate judge's non-dispositive order, the district court must review the objections and 'modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 47, 50 (S.D.N.Y. 2014) (quoting Fed. R. Civ. P. 72(a)). A magistrate judge's order is "clearly erroneous" if "'on the entire evidence,' the [district court] is 'left with the definite and firm conviction that a mistake has been committed.'" *Easley v.. Cromartie,* 532 U.S. 234, 243 (2001) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)). The clearly erroneous standard is "highly deferential, and magistrate judges are afforded broad discretion in resolving non-dispositive disputes and reversal is appropriate only if their discretion is abused." *E.E.O.C. v. Teamsters Loc. 804*, No. 04 CIV. 2409 (LTS), 2006 WL 44023, at *1 (S.D.N.Y. Jan. 9, 2006) (quotation and alterations omitted).

### II. Plaintiffs' Objections are Untimely and Judge Payson's Determination was not Clearly Erroneous or Contrary to Law

In her March 3, 2023 Decision and Order, Judge Payson, in relevant part, denied Plaintiffs' motions for appointment of an expert and a special master, denied Plaintiffs' premature motions in limine, denied Plaintiffs' various requests for sanctions, and denied in part and granted in part Plaintiffs' motions to compel. (Dkt. 159; *see* Dkt. 126; Dkt.

141; Dkt. 143; Dkt. 152). For purposes of its discussion below, the Court assumes familiarity with Judge Payson's Decision and Order and with the parties' briefing on the underlying motions. Plaintiffs' objections make the following arguments: (1) Judge Payson erred in basing her decision on Plaintiffs' motions to compel in part on her conclusion that there was no conditions of confinement claim pending in this action; (2) Judge Payson erred in finding that Request No. 5 of Plaintiffs' Second Set of Discovery Demands was not relevant insofar as it sought information after Hill's cell extraction; and (3) Judge Payson erred in not appointing a special master or issuing sanctions, because Plaintiffs have "substantial evidence that the defendants are blatantly lying to this court about documents in their possession and/or not in their possession." (Dkt. 191).

As a threshold matter, Plaintiffs' objections are untimely. Judge Payson entered her Decision and Order on March 3, 2023. (Dkt. 159). Plaintiffs did not file their objections until July 26, 2023, over four months later. (Dkt. 191).[1] Federal Rule of Civil Procedure 72(a) provides that "[a] party may serve and file objections to" a magistrate judge's non-dispositive order "within 14 days after being served with a copy," and "[a] party may not assign as error a defect in the order not timely objected to." "[T]he Second Circuit and courts within this Circuit have routinely held that failure to file objections to a magistrate

---

[1] Plaintiffs' objections have a typed date of March 11, 2023, and a handwritten date of July 21, 2023, with the handwritten note "Resubmit." (Dkt. 191 at 6). They were mailed on July 25, 2023, and received by the Court on July 26, 2023. (Dkt. 191-1 at 2). Neither Hill nor Pittman was incarcerated at that time, and so they are not entitled to the benefit of the prisoner mailbox rule. Further, the docket in this case contains no record of these objections having been submitted in March of 2023, notwithstanding Plaintiffs' claim that they were being resubmitted.

judge's order in a timely manner operates as a waiver of such objections." *David v. Weinstein Co. LLC*, No. 18-CV-5414 (RA), 2020 WL 4042773, at *4 (S.D.N.Y. July 17, 2020) (collecting cases). This is a sufficient basis, standing alone, for the Court to deny Plaintiffs' objections.

Even had Plaintiffs' objections been timely, they fail on the merits. As to Plaintiffs' first argument, in its Decision and Order permitting certain of Plaintiffs' claims to proceed to service, the Court did not construe the second amended complaint as setting forth a conditions of confinement claim, nor did it permit any such claim to proceed to service. Plaintiffs did not, at that time, file with the Court a motion seeking reconsideration or any other document indicating that the Court had wrongly failed to recognize such a claim. The Court's Decision and Order is the law of the case, and it was neither clearly erroneous nor contrary to law for Judge Payson to abide by it.[2]

---

[2] To the extent Plaintiffs are now trying to argue that the Court erred in its Decision and Order screening the amended complaint (*see* Dkt. 191 at 2 ("The Court's screening decision . . . also made this blatant error. The plaintiffs contend that a direct and factual reading of the complaint, demonstrates that the plaintiffs clearly raised a condition of confinement claim in their complaint[.]")), they have failed to address the appropriate standard for revisiting a prior Court determination and have not shown that they are entitled to such relief. Further, the allegations that Plaintiffs point to as allegedly supporting a conditions of confinement claim (*see id.*) appear within the second cause of action, which was allowed to proceed to service against several former defendants and subsequently voluntarily dismissed by Plaintiffs (*see* Dkt. 22; Dkt. 172). It thus is a moot point in any event whether this claim—which was not permitted to proceed to service against Defendant—was properly characterized solely as a due process claim (as the Court found) or should have also been deemed to have a conditions of confinement component (as Plaintiffs now urge).

Turning to Plaintiff's second argument, the Court finds no error in Judge Payson's relevancy determination. Moreover, Plaintiffs have voluntarily dismissed the claims to which the discovery request at issue related, thus rendering the issue moot.

Finally, Plaintiffs have failed to demonstrate that Judge Payson erred in denying their requests for a special master and for sanctions. While they claim to have "substantial evidence" of wrongdoing by the defendants, they have submitted no such evidence in connection with their objections. Accordingly, the Court denies Plaintiffs' objections (Dkt. 191) in their entirety.

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.   **Factual Background**

Defendant served as a Commissioner of the New York State Commission of Correction ("SCOC") from June 17, 2013, to June 25, 2013. (Dkt. 197-4 at ¶ 2). The SCOC has "three deliberative members" who are "appointed by the Governor to statutory terms with the advice and consent of the New York State Senate." (*Id*. at ¶ 7). The deliberative members of the SCOC fill three separate roles: (1) Chair and Chief Executive Officer, (2) Chair of the Medical Review Board ("MRB"), and (3) Chair of the Citizen's Policy and Complaint Review Council ("CPCRC"). (*Id*. at ¶ 8). The CPCRC serves as the SCOC's grievance oversight committee, and consists of nine members appointed by the Governor. (*Id*. at ¶ 9).

The CPCRC "is responsible for rendering determinations of grievances appealed from any local correctional facility to include the treatment of incarcerated individuals in the local correctional facilities." (*Id*. at ¶ 10). To initiate the grievance process, an

incarcerated person must file a grievance form with the local correctional facility's grievance coordinator. (*Id*. at ¶ 11). After the grievance coordinator makes a determination, the incarcerated person can appeal to the chief administrative officer of the local correctional facility. (*Id*.). If the incarcerated person is unsatisfied with the chief administrative officer's determination, he or she can appeal to the CPCRC. (*Id*.).

An SCOC correctional facility specialist reviews the relevant information and makes a recommendation to the CPCRC as to whether the local correctional facility was in compliance with SCOC's regulations. (*Id*.). The CPCRC then reviews the grievance, the supporting documentation, and the recommendation, and votes whether to accept or deny the grievance. (*Id*. at ¶ 12). The CPCRC issues a written determination. (*Id*.).

In 2013, Defendant was designated to serve as chair of the CPCRC. (*Id*. at ¶ 16). In that role, he reviewed and voted on grievances brought before the CPCRC, but did not review complaint letters received by the Commission. (*Id*.).

On May 14, 2018, Defendant was designated by the Governor to chair the MRB, and his voting rights on the CPCRC ended. (*Id*. at ¶ 17). However, he continued to sign letters issued by the CPCRC, as no new chair had been designated. (*Id*. at ¶ 18).

Hill's incarceration in the Jail began on or around October 6, 2017. (Dkt. 197-10 at 58). He testified at his deposition that he and Pittman began making a plan to get married around October 11, 2017. (*Id*. at 60). Hill spoke to the lieutenants and the captains at the Jail, who told him "that there [was] no such thing as anybody getting married in the jail." (*Id*.). Hill further testified that he spoke to "the chief of the jail," who "went through the

computer" and said, "oh you got a constitutional right to get married, file a grievance." (*Id*. at 60-61).

Hill testified that he had several conversations with staff at the Jail in which they told him that he could not marry Pittman unless Defendant's office approved the request. (Dkt. 197-10 at 86-88). When asked whether he believed that Defendant had prevented him from getting married to Pittman, Hill stated that he did, and that this belief was based on Defendant having denied numerous grievances that Hill submitted while incarcerated at the Jail. (*Id*. at 103-06). However, Hill acknowledged that Defendant "never wrote [him] back" or said anything to him personally. (*Id*. at 106). Instead, he testified that he communicated directly with people at the Jail who would convey to him what Defendant's decision was. (*Id*. at 106-08). Hill further acknowledged that he was not present for any communications between Defendant and Jail staff and that he had no personal knowledge of the communications between them. (*Id*. at 108-15).

The record before the Court contains a grievance filed by Hill on December 18, 2017, to the SCOC. In this grievance, Hill states that he "has submitted several grievances for appeal. And, new ones to be decided which not been returned to him. Especially his grievance about marrying his financee, and having it posted not take stapples out of legal documents and shuffle papers." (Dkt. 197-7 at 3 (spelling as in original)). This grievance was returned to the Jail on February 3, 2018, with a cover letter signed by Terrence Moran, SCOC's Director of Operations. (*Id*. at 2). Defendant has submitted a sworn declaration indicating that this grievance was not reviewed by the CPCRC and that he has no

recollection of ever seeing, working on, or being personally involved in any manner with this grievance. (Dkt. 197-4 at ¶¶ 24-25).

The record further contains a complaint letter dated January 17, 2018, purportedly from Pittman to Defendant. (Dkt. 197-8 at 3-4).[3] In this letter, Pittman states that on November 13, 2017, she requested permission from Chief Jail Administrator Kevin Payne ("Payne") to marry Hill. (*Id*. at 3). The letter further states that Jail staff told Pittman that Payne would not allow her and Hill to marry. (*Id*.). Pittman reports that after Hill filed grievances related to the refusal of her request to marry Hill, her telephone communication with Hill was interfered with. (*Id*. at 3-4). She asks Defendant to "step in and correct the problem." (*Id*. at 4). On February 15, 2018, the SCOC's Field Operations Bureau sent a copy of this letter to Payne, asking him to "offer any assistance to" Pittman that he deemed appropriate. (*Id*. at 2). In his sworn declaration, Defendant states that he does not recall ever seeing this letter or being personally involved in any manner in responding to this complaint. (Dkt. 197-4 at ¶ 27). Defendant further notes that the complaint was reviewed and responded to by someone with the initials "C.M.," which are not his initials. (*Id*.).

The record also contains a complaint letter from Hill dated January 21, 2018, and addressed "Dear Commissioner." (Dkt. 197-9 at 2-3). In this letter, Hill complains— among other things—about not being permitted to marry Pittman, and requests the recipient's "attention and immediate action." (*Id*. at 3). This complaint was also reviewed

---

[3] The Court notes that while this letter purports to be from Pittman, it is written in Hill's distinctive handwriting. It also misspells fiancée as "financee," just as Hill did in his grievance. (*Compare* Dkt. 197-7 at 3 *with* Dkt. 197-8 at 3).

by an individual with the initials "C.M." (*Id*. at 2).  On January 30, 2018, SCOC's Field Operations Bureau sent a response letter to Hill indicating that his grievances were being processed by the CPCRC board.  (*Id*. at 4).  Defendant states in his declaration that he does not recall ever seeing or being personally involved in any manner with this complaint.  (Dkt. 197-4 at ¶ 28).

Defendant states in his declaration that he was not involved in the determination of any CPCRC grievance appeal made by either of Plaintiffs regarding their request to get married.  (*Id*. at ¶ 20).  He denies having spoken to Jail staff about Hill's right to marry while incarcerated, and states that "at no time did [he] make any decision, or have any authority to make any decision, to grant or deny Plaintiff Hill's request to get married while in Niagara County Jail."  (*Id*. at ¶¶ 22-23).

At her deposition, Pittman was asked whether she had ever had any personal contact with Defendant.  (Dkt. 197-11 at 113).  She testified that she had not.  (*Id.*).  When asked whether Defendant had instructed anyone not to let her and Hill get married, Pittman replied, "[n]ot to my knowledge, no."  (*Id*. at 118).

## II.     Procedural Background

As noted above, after the Court screened the matter pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, Plaintiffs were permitted to proceed to service on six claims against six defendants.  (*See* Dkt. 22).  The only claim that proceeded to service against Defendant was for denial of permission to marry.  (*Id*. at 24).  Plaintiffs subsequently voluntarily dismissed all their claims except against Defendant.  (Dkt. 172; *see also* Dkt.

197-11 at 124-25 (Pittman confirming at her deposition that Plaintiffs had settled their claims against all of the individuals who worked for the Jail)).

Discovery in this matter closed on August 24, 2023. (Dkt. 188). Defendant filed his motion for summary judgment on November 15, 2023. (Dkt. 197). Plaintiffs opposed the motion (Dkt. 200), and Defendant filed a reply (Dkt. 201). On February 25, 2024, without seeking or receiving leave of the Court, Plaintiffs filed a sur-reply. (Dkt. 202).[4]

### III. Discussion

#### A. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the

---

[4] The Court previously cautioned Plaintiffs that "sur-replies are not permitted . . .without leave of the Court and that future sur-replies filed without obtaining such leave may not be considered." (Dkt. 43 at 2 n.1). The Court has nevertheless reviewed Plaintiffs' unauthorized sur-reply and found that it does not change the outcome of Defendant's motion for summary judgment.

party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

    **B.**    **Defendant is Entitled to Summary Judgment**

Defendant seeks summary judgment on the sole remaining claim in this matter, arguing that Plaintiffs cannot demonstrate his personal involvement in any denial of their request to marry while Hill was incarcerated in the Jail. (Dkt. 197-3 at 10-13). The Court agrees, for the reasons that follow.

Plaintiffs' claim is brought pursuant to 42 U.S.C. § 1983, which "authorizes a court to grant relief when a party's constitutional rights have been violated by a state or local official or other person acting under color of state law." *Washington v. Cnty. of Rockland*,

373 F.3d 310, 315 (2d Cir. 2004). "To establish a Section 1983 violation, a plaintiff must plead (and later prove) that each defendant was personally involved in the alleged constitutional violation." *Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023); *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("a plaintiff must plead and prove that each Government-official defendant, <u>through the official's own individual actions</u>, has violated the Constitution" (quotation omitted and emphasis added)).

Here, assuming for purposes of the instant motion that Plaintiffs were denied their constitutional right to marry, Defendant has satisfied his burden of demonstrating that there is no genuine issue of material fact regarding his lack of personal involvement in that denial. Defendant has submitted a sworn declaration stating that, prior to the commencement of this lawsuit: (1) he was unaware of any grievance or complaint letter filed by Plaintiffs regarding a denial of their right to marry; (2) he was not involved in the determination of any CPCRC grievance appeal made by Plaintiffs regarding a denial of their right to marry; (3) at no time did he speak to Jail staff about Hill's right to get married while incarcerated, nor did he ever advise anyone to deny Plaintiffs' request to get married; and (4) he did not make any decision, or have the authority to make any decision, regarding Plaintiffs' request to get married. (Dkt. 197-4 at ¶¶ 19-29). The documentary evidence of record is consistent with Defendant's declaration, showing that SCOC staff other than Defendant responded to Hill's grievance and to Hill's and Pittman's complaint letters. Defendant cannot be held personally liable under § 1983 simply because of his supervisory role over the staff members who processed and responded to these items. *See Tangreti*, 983 F.3d at 619 ("[The plaintiff] must therefore establish that [the defendant] violated the

Eighth Amendment by [the defendant's] own conduct, not by reason of [the defendant's] supervision of others who committed the violation.").

In opposition to Defendant's motion, Pittman has submitted a sworn affidavit. (Dkt. 200-3). In this affidavit, she claims that in December of 2017, she overheard officers in the Jail state, "Chief Payne will never let them get married in this Jail." (*Id*. at ¶ 11). Pittman states that she told Hill what she had overheard, and he confronted Jail Captain Kolbe, who "disclosed to [Plaintiffs], he spoke with defendant Loughren about the County Jail Handbook not having any policies on the subject of marriage." (*Id*. at ¶ 12). Pittman further claims that Captain Kolbe "revealed he, James Voutour, and commissioner Loughren review case law dated in Turner v. Safley . . . recognizing there in a guaranteed right to marriage did exist for inmates[.]" (*Id*. at ¶ 14).

"A party cannot rely on inadmissible hearsay in opposing a motion for summary judgment absent a showing that admissible evidence will be available at trial." *Abdel-Karim v. EgyptAir Airlines*, 116 F. Supp. 3d 389, 409 (S.D.N.Y. 2015) (quotation and alteration omitted), *aff'd*, 649 F. App'x 5 (2d Cir. 2016). Here, these alleged statements by Captain Kolbe are inadmissible hearsay, and Plaintiffs have made no showing that they would be available at trial in an admissible format. The same is true of Hill's deposition testimony that various Jail staff told him that Defendant had instructed Payne to deny Plaintiffs' request to marry. Accordingly, neither Pittman's affidavit nor Hill's deposition testimony is sufficient to demonstrate a genuine issue of material fact.

Moreover, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show

that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Pittman confirmed at her deposition that she had never had any direct communications with Loughren. She accordingly has no personal knowledge regarding any alleged conversations between Loughren and Captain Kolbe. *See Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) ("Although Kravitz stated in an affidavit that these officers were present on the evening of June 3, he conceded in deposition testimony that this statement was not based on personal knowledge. . . . The district court properly dismissed the claims against these officers because Kravitz could not identify admissible evidence that the officers were personally involved in the alleged deprivation of Kravitz's rights."). Hill similarly confirmed his lack of any personal knowledge at his deposition.

Plaintiffs also argue that Defendant's involvement in processing other grievances filed by Hill during his incarceration at the Jail is evidence that he was involved in the processing of Hill's grievance regarding his request to marry Pittman. (*See* Dkt. 200; Dkt. 202). However, the uncontested evidence of record shows that the SCOC receives "30,000 significant facility incident reports, 3,000 complaint letters and 5,000 formal grievance appeals to the CPCRC" on an annual basis. (Dkt. 197-4 at ¶ 31). The SCOC further has multiple staff members assigned to "triage and process" this massive influx of documents. (*Id.*). Under these circumstances, the fact that Defendant worked on the appeals of some of Hill's non-marriage related grievances is not sufficient evidence for a fact-finder to conclude that he was personally involved in the processing of Hill's marriage-related grievance, particularly where the documentary evidence shows that it was a different staff member who sent the response thereto.

In sum, no reasonable fact-finder could conclude, based on the evidence of record that would be admissible at trial, that Defendant was personally involved in denying Plaintiffs' request to marry. As such, he cannot be held liable under § 1983, and he is entitled to summary judgment in his favor.

## CONCLUSION

For the foregoing reasons, Plaintiffs' objections to Judge Payson's Decision and Order (Dkt. 191) are denied and Defendant's motion for summary judgment (Dkt. 197) is granted. The Clerk of Court is directed to enter judgment in favor of Defendant and close the case. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). Any request to proceed on appeal in forma pauperis should be directed on motion to the United States Court of Appeals for the Second Circuity in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 4, 2024
        Rochester, New York